1

1              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF NEW YORK
2

3    JONATHAN COHEN, ET AL.,    ) Civil Action
              Plaintiffs,    ) No. 13-5612 (FB)
    vs.                )  -and-
4    G&M REALTY L.P., ET AL.,   ) No. 15-3230 (FB)
              Defendants.   )
5    -------------------------- )
    MARIA CASTILLO, ET AL.,    ) PRETRIAL CONFERENCE
6              Plaintiffs,    )
    vs.                ) Brooklyn, New York
7    G&M REALTY L.P., ET AL.,   ) Date:  October 6, 2017
              Defendants.   ) Time:  3:30 p.m.
8  _____

9       TRANSCRIPT OF PRETRIAL CONFERENCE
                  HELD BEFORE
10     THE HONORABLE JUDGE FREDERIC BLOCK
          UNITED STATES DISTRICT JUDGE
11  _____

12             A P P E A R A N C E S

13  For the Plaintiffs:      Eric Baum, Esq.
                       Andrew Miller, Esq.
14                 Eisenberg & Baum, LLP
                       24 Union Square East, Fourth Floor
15                 New York, New York  10003
                       212-353-8700
16

   For the Defendants:      David G. Ebert, Esq.
17                 Mioko Catherine Tajika, Esq.
                       Ingram Yuzek Gainen
18                 Carroll & Bertolotti, LLP
                       250 Park Avenue, 6th Floor
19                 New York, New York  10177
                       212-907-9600
20

21  Proceedings reported by machine shorthand, transcript produced
   by computer-aided transcription.
22  _____

23  Court Reporter:         Annette M. Montalvo, CSR, RDR, CRR
                       Official Court Reporter
24                 United States Courthouse, Room N375
                       225 Cadman Plaza East
25                 Brooklyn, New York  11201
                       718-804-2711

2

1          (WHEREUPON, commencing at 4:13 p.m., the following

2    proceedings were had in open court, to wit:)

3          THE COURTROOM DEPUTY:  Civil cause for a pretrial

4    conference.  *Cohen v. G&M Realty.*

5          I ask counsel to please state your appearances.

6          MR. BAUM:  Eric Baum for plaintiffs, from

7    Eisenberg & Baum.  Good afternoon, Your Honor.

8          THE COURT:  Good afternoon.

9          MR. MILLER:  Andrew Miller, also for the plaintiffs.

10         THE COURT:  So I have the plaintiffs' proposed

11   exhibit list, I am looking for the defendants'.  I don't see

12   it right here.

13         (Short pause.)

14         THE COURTROOM DEPUTY:  Do you want to state your

15   appearances, counsel?

16         MS. TAJIKA:  Mioko Tajika for the defendants.

17         MR. EBERT:  David Ebert for the defendants.

18         THE COURT:  All right.  So we have a lot of things

19   to start discussing to prepare this case for trial.  And I

20   think maybe the best way to start would be to go through the

21   in limine applications, and I think that we will be able to

22   resolve a number of things while we discuss that.

23         But before then, I have to get a realistic sense

24   about how we are going to try this case.  I have here, as we

25   discussed last time, a thousand proposed exhibits from the

3

1  plaintiff.  It makes it unruly and virtually impossible, I
2  mean, to process a case before a jury with over a thousand
3  exhibits.  We had a little bit of a discussion about that
4  before, and apparently, Mr. Baum, right --
5           MR. BAUM:  Yes, Your Honor.
6           THE COURT:  -- you have some thoughts about how we
7  can harness our energies in that respect.
8           MR. BAUM:  Yes.
9           THE COURT:  We'll talk about it.  And defendants
10  have submitted a large number exhibits as well, but not quite
11  as many as the plaintiff.
12          MR. EBERT:  We substantially reduced that,
13  Your Honor.
14          THE COURT:  How many do we have now?  Do you have
15  the list?
16          MR. EBERT:  We have about a hundred.
17          THE COURT:  We have about a hundred.  So if we give
18  the jury over a thousand, and then a hundred from you, we are
19  going to have some problems.
20          MR. EBERT:  I am not going to use a hundred
21  exhibits.
22          THE COURT:  We are going to talk about how to shape
23  this up.  Right now we're scheduled for jury selection, as of
24  next Monday.  You undoubtedly are going to come back here with
25  a, you know, more focused exhibit list that we're going to

4

1   deal with because we're not going to be going through the

2   submission of a thousand exhibits and stop the clock, you

3   know, every time we have to introduce an exhibit.  We clear

4   this in advance.

5         So you are going to have to come back again with a

6   view towards shaping this up so that we can simply tell the

7   jurors, these are the exhibits, you don't have to lay a

8   foundation for all them, you will just, you know, can be

9   introduced into evidence as you use them, and you can have the

10  witness testify about them.

11        The other thing is I do not have any proposed

12  witness list.  I assume that the plaintiff is going to have at

13  least 21 witnesses, one for each of the plaintiffs.

14        MR. BAUM:  Yes, Your Honor.

15        THE COURT:  And then you have a couple of experts on

16  top of that, right?

17        MR. BAUM:  We have three experts, and then we do

18  have other people that we intended to call.  I can hand up the

19  witness list.  We exchanged this with counsel a few weeks ago.

20        THE COURT:  I would like to see it.  How many

21  proposed witnesses do you have?

22        MR. BAUM:  So it's the plaintiffs, the three

23  experts, and then Gerald Wolkoff, the defendant is one of the

24  witnesses.

25        THE COURT:  Don't name them all.  Just give me the

5

number.

MR. BAUM:  And then there are about five others.

THE COURT:  And each of the 21 plaintiffs --

MR. BAUM:  Five or six.

THE COURT:  -- are going to be testifying as well?

MR. BAUM:  Each of the 21 will be testifying as well.

THE COURT:  So we are talking about a very long trial.

MR. BAUM:  Well, Your Honor, I am -- just if I may, we are, on our end, trying to do what we can to really expedite this.  As for the exhibits, these are all -- I just want to kind of show you how this plays out.  It is not as unruly as you may think it is.  If I can hand this up to you.  These are just exhibits that are already exchanged.  That's one -- I picked one client, one plaintiff in the case.

And I just want to show you, it is not unruly.  You are talking 21 plaintiffs, and you've got -- I mean, roughly, it's an average of maybe 30 to 60 exhibits per plaintiff, it goes up on the -- the exhibits go up on the screen, we roll through them quickly and I get -- you know, I go through their testimony as quickly as I can, and the experts, obviously, have exhibits that they rely on.  So from our standpoint, we're going to move this as quickly as possible.

THE COURT:  Let's go back to the numerosity of the

6

1    witnesses.

2           Each, it seems to me, have to be separately

3    considered.  I see no view of this case other than presented

4    to the jury, questions concerning each of the 21 plaintiffs.

5    It seems that the jurors will have to decide whether any of

6    those works of art -- I think there are about 50 --

7           MR. BAUM:  51.

8           THE COURT:  -- 51, qualify under there as works of

9    art, right?

10          MR. BAUM:  Yes, Your Honor.

11          THE COURT:  I know of no other way, than to have the

12   jurors decide, with respect to each of these 21 plaintiffs,

13   whether they are recognized works of art, and which of their

14   works would be considered recognized works of art.  It seems

15   to me that it is going to be a huge verdict sheet that I have

16   to submit to the jurors, unless you can tell me how that can

17   be obviated.

18          MR. BAUM:  No, you're correct, Your Honor.  We

19   already proposed charges, and defense counsel proposed

20   charges.  But, obviously, it is going to be the same level

21   of -- the same questions for each juror, so I think there's

22   going to be a lot of -- it is repetition, but you are correct.

23   Each plaintiff has their own individual claim.

24          THE COURT:  Right.

25          So, collectively, there will be 51 alleged works of

1 art that will be ascribed to 21 plaintiffs.

2          MR. BAUM:  Yes.

3          THE COURT:  So I imagine that we have to have 51

4 questions posed to the jurors.

5          MR. BAUM:  Yes.

6          MR. EBERT:  Yes.

7          THE COURT:  I am just trying to get a practical

8 handle, because I have to start thinking about how to manage

9 this case so that it is presented to jurors in a rational way.

10 But I see no way of avoiding that.  And we spoke about the

11 numerosity of the works of art.  I think there was a time in

12 the past where you wanted more than 51, I said no.  We are

13 going to limit it to just what you pled.  I think that's the

14 sensible resolution that I made in this case.  There's enough

15 there for them to be successful, and they don't need more.

16 And I didn't want to expand the trial because it becomes

17 unruly to manage it, if it goes behind 51.  We have enough to

18 do as it is.  So I think we are on board there, right?

19          So they are going to be asked, I guess, 51

20 questions, and I guess they will be grouped under the

21 particular artist's name, artist number 1 may have three of

22 these works of art, artist number 2 may have four, and that

23 will be the way it will come out on the verdict sheet, I

24 suspect, right?

25          MR. BAUM:  Yes.

8

1        THE COURT:  Now, as far as their -- the works, I

2  mean, the jurors, of course, have to see them.  There's no way

3  of avoiding that.  So they are going to be shown 51 of these

4  alleged works of art.

5        MR. BAUM:  Yes.

6        THE COURT:  Okay.  And you say that you have put

7  them together in separate binders for each of your clients.

8        MR. BAUM:  Yes.  And in that binder is not only the

9  work of art, but it would be for -- I chose one plaintiff, to

10 give you an example, of how I could do this expeditiously.  It

11 seems like it is a tremendous amount of exhibits, but when it

12 breaks it down per plaintiff, and you're talking about modern

13 technology, I can flip through the screen and go through those

14 exhibits very quickly.

15       THE COURT:  Well, this is a very good thing.  In

16 this binder would be there already works of art, plus, I

17 guess, material that would support the expert's testimony that

18 they are recognized --

19       MR. BAUM:  Yes, Your Honor.

20       THE COURT:  -- as works of art.  That makes sense.

21       And I think they should be entitled to see that.  I

22 mean, that makes it, I think, easier to present to the jurors.

23       MR. BAUM:  Yes, Your Honor.

24       THE COURT:  The experts, of course, are going to be

25 testifying as to why each of these 21 people should be

1   adjudicated to be artists who have, you know, recognized works

2   of art.  And they are going to be referring, I guess, to these

3   documents, which will be in evidence, to support their

4   testimony.

5          MR. BAUM:  Yes, Your Honor.  And I had a question

6   about that, just procedurally.  My thought was to call in

7   approximately six or seven artists at a time, then to have the

8   expert come in who's talking about recognized stature, discuss

9   those six or seven with plaintiffs, and then move onto the

10   next batch.  I just think it will be more interesting for the

11   jury, and it will keep everything --

12          THE COURT:  I think that makes sense, because if you

13   do all 21 and then have the experts deal with 21, I mean, it

14   is going to get tedious, and I think you have to break it

15   down.

16          MR. BAUM:  That's what I was planning on doing.

17          THE COURT:  I guess, theoretically, we have the

18   jurors may say yes as to this particular plaintiff and no as

19   to that particular plaintiff.  They are going to make that

20   call, right?

21          MR. BAUM:  They are going to have to make an

22   individual decision.

23          THE COURT:  If it was Picasso who had one of these,

24   you know, works of art that was taken off the wall, that would

25   be a separate determination than if it was Judge Block who had

10

1    his works of art on the wall, perhaps.

2         Does that make sense to you?

3         MR. EBERT:  I'm sorry, it doesn't, Your Honor.  If I

4    have to cross-examine an expert, and they come off the stand

5    and on the stand, and off the stand and on the stand, there

6    are things I'm going to want to do as themes for the expert in

7    whole.  And for them to keep getting back on the stand and

8    talking about individual works seems to me to be --

9         THE COURT:  Well, it seems to me that when the

10   expert 1 is going to testify about, let's say, a group of six,

11   you can certainly cross-examine that expert, and I am sure

12   that cross-examination will flow over to some extent when that

13   expert will testify in respect to the next group.  I like the

14   grouping, and you will have ample opportunity to challenge the

15   concepts that the experts employ and their bases for that,

16   which will obviously be able to flow over to the next group of

17   artists.  Make sense to me.  I think we can manage it.

18        MR. EBERT:  Maybe the expert has to first testify as

19   to the overall methodology.  Because there's a lot involved

20   there in saying this is how I -- this is how I determined

21   whatever I have to determine.

22        THE COURT:  They will so testify.  But that would be

23   the first time --

24        MR. EBERT:  Right.

25        THE COURT:  -- that the expert will testify, you

1  will have full opportunity to cross-examine.  Right.

2         MR. EBERT:  And then my experts will go through 51

3  works all at once?

4         THE COURT:  Well, you know, we are here to try to

5  collectively, collaboratively, and professionally work out a

6  methodology for presenting potentially complex information to

7  a lay jury.  So we have to focus our professional

8  responsibilities to see how we can best do that.  I am open to

9  all reasonable suggestions.  Mr. Baum has presented something

10  which sounds plausible to me.  It is going to be easier to

11  manage it that way.  It is going to take several days for this

12  trial to happen, obviously, and if you can break it up, it

13  would be some value.

14         MR. EBERT:  I would just ask, if the expert can

15  appear, without talking about any artists yet, and testify as

16  to the methodology, and then I get to cross-examine about the

17  methodology, then it makes much more sense that the jurors are

18  hearing her testimony in light of --

19         THE COURT:  You say methodology.  What do you mean

20  by that?

21         MR. EBERT:  On how much these are worth.  There's a

22  whole analysis of Banksy, and it's 20 percent of Banksy, it's

23  40 percent of Banksy, and this one is this much because of

24  that.

25         THE COURT:  I think it is going to flow nicely once

1    the bell rings.  The expert will testify, and the first six,

2    let's say, right.  And the expert is going to explain -- I

3    will ask the expert, have you formed an opinion as to whether

4    any or all of these six works of art, so to speak, are

5    recognized works of stature, right?  The expert is going to

6    say, presumably, yes.  We go right to the opinion, so that the

7    jury hears the opinion, understands the flow of the testimony

8    that will follow.

9            And then I will probably ask the expert, you can ask

10   the expert, do you want to let the jury know, since you have

11   opined that they are recognized works of art, what the basis

12   is for your opinion.  Explain it to the jurors.

13           And we don't have to go into excruciating detail, we

14   just want the jurors to understand why they have so opined,

15   right?  And then you can cross-examine the expert, we can go

16   back and forth, and then we will have it all out in the real

17   time.

18           MR. EBERT:  Very well.

19           THE COURT:  So it will work out.  I think I can

20   manage the trial effectively in that context.  So I think

21   that's fine.  I like the fact that you have put together 21 of

22   these documents.

23           MR. EBERT:  Well, we have some objections to what's

24   in those.  I haven't seen those, but there's materials in

25   there that I don't think are appropriate, including articles

1  about the lawsuit, so.

2          THE COURT:  We will go through them.  I mean, I

3  don't know about articles about the lawsuit.  I mean, look.  I

4  haven't gone through these things, but there should not be

5  articles about the lawsuit.  The lawsuit is separate.

6          MR. EBERT:  There's may.

7          THE COURT:  The only thing, I think, is relevant to

8  me would be as to the paintings, okay, and if there's anything

9  that bears upon whether they are recognized works of art --

10 actually, if there's an article that they are at the

11 Smithsonian, that would be admissible.  The expert's going to

12 rely upon that to support his or her conclusion, right?

13         MR. BAUM:  Yes.

14         THE COURT:  And I think that's all right.  But if

15 there's anything in these documents that talks about what

16 Judge Block did, what I said, any prior opinions of mine,

17 that's not relevant to what we want the jurors to really know.

18         So you can look through all of these.  You have 21

19 of these documents.  And we have to know if there's any real

20 problem with that.  So you tell me.

21         MR. BAUM:  Your Honor, it is, just so you know, we

22 are rolling through getting those books together, and it is a

23 work in progress.  So we have two or three, we're going to be

24 working over the weekend, to put them together.  But we will

25 have everything ready.

1    THE COURT:  So we know now, when you put them

2  together, that we only want the works that we're talking

3  about, and then material that is going to be the basis for why

4  the expert says that I consider this to be a recognizable work

5  of art because, you know, that particular painting was

6  exhibited at the Smithsonian or was on the White House wall or

7  whatever.

8         And I think it is okay to have whatever support

9  material you have here, to show that, yes, these are

10  recognized, and here's why they were recognized, because

11  there's an award that was given, because they appeared

12  someplace else, because Banksy embraced it, whatever, right?

13  I think that's okay.  But nothing in here that's going to talk

14  about prior opinions that the court rendered, okay?

15         MR. BAUM:  No, but the expert -- and we will go

16  through it now, and, obviously, pull out, to the extent

17  there's anything that the court discussed or anything about

18  the court case, I don't think that's an unreasonable request,

19  but, obviously, other material about the artist that the

20  experts relied on is in there.

21         So that's a part of it, too.  But you can see it is

22  not voluminous.  That's one -- that -- we can go through that

23  in an hour.

24         THE COURT:  Here's what we'll do.  We want to make

25  sure that when the bell rings, we can have these just in

1    evidence, okay.  And if there's any deleterious material in

2    here, then I want you folks to really go through with a view

3    of what we're talking about here today.  I don't want to have

4    to rip these things apart next week in the middle of a trial.

5          So I think you are going to have to come back with

6    all of these documents put together, by Thursday.  And how is

7    your adversary going to have a chance to look at them?

8          MR. BAUM:  Well, so you know, Your Honor, there's

9    nothing in those books that's not on an actual exhibit on the

10   exact exhibit list.  It is just a matter of how we put them

11   in.  I will do my very best to get them -- I'll do it as a

12   work in progress.  I will give it to them when they're ready.

13         THE COURT:  Look.  We are starting a trial on

14   Monday.  Now, they have to have an opportunity to say, now,

15   look.  In this particular document here, you have something

16   here which doesn't belong because there's nothing to do with

17   the person's reputation, it is material that should not be in.

18   It is maybe a decision that the judge rendered, for example,

19   that doesn't go in here.

20         I assume you are going to be able to be -- have the

21   opportunity to go through these documents.  You have the right

22   to do that.

23         MR. EBERT:  There are a couple of basic issues.  One

24   is, there are -- there's a lot of material about other

25   artworks that these artists have done, which I think is

1  completely irrelevant because we're not talking about the

2  recognized stature of the artist, it is the artwork.  So what

3  they're doing is they're putting in a bunch of other works

4  that these artists have done to show this.

5         THE COURT:  Except that they are also claiming that

6  the whitewashing of the works under the first section of

7  their -- which allows for damages to be assessed, even if they

8  are not recognized works of art, as long as it is something

9  that was amenable to their reputation.

10        So, for example, let me just -- so this is both an A

11 and a B lawsuit.  And A talks about the fact that they have

12 the right to prevent any intentional distortion, mutilation,

13 or other modification of that work, which would be prejudicial

14 to his or her honor or reputation, and any intentional

15 distortion, mutilation, or modification of that work is a

16 violation of that right.

17        So you're talking about now anything that would be

18 prejudicial to the artist's honor or reputation.

19        MR. EBERT:  That's --

20        MS. TAJIKA:  That provision doesn't apply in this

21 case, Your Honor.

22        THE COURT:  It certainly does.

23        MS. TAJIKA:  Subsection A only applies to works that

24 can be repaired, not works that have been completely

25 destroyed.  In this case, plaintiffs admit that the works have

1   been completely destroyed.  They filed a motion for sanctions.

2          THE COURT:  No, no, no.  There's a view of this

3   case, where, you know, prior to the 90-day expiration of this

4   period there was mutilation of the work, there was

5   whitewashing, some of that work was still visible after the

6   whitewashing.  A is in play.  So you have your exception, but

7   this is both an A and a B case that's going to the jury.

8   Okay?

9          MS. TAJIKA:  There's no authority for that,

10  Your Honor, there is no --

11         THE COURT:  There is now.  It is called the Judge

12  Block authority.  A and B are both going to the jury.  They

13  can show that this work was mutilated, that it was

14  whitewashed, and that that was really something which was

15  prejudicial to the artist's honor or reputation.

16         MS. TAJIKA:  Your Honor, what is the difference

17  between mutilation and destruction?

18         THE COURT:  The statute draws a distinction between

19  the two.

20         MS. TAJIKA:  Right.  And the distinction is, if the

21  work has been destroyed, you can't try to win under A.  Here,

22  they're saying the works have been destroyed.  It is not a

23  lesser included offense, Your Honor.  They concede that the

24  works have been completely destroyed, okay.  So then, okay, if

25  a recognized stature doesn't work, I'm still going to try to

1  win under mutilation, distortion, modification.  It doesn't

2  work that way.  There's a Southern District of New York case

3  that we cite in our memorandum where the plaintiff, his

4  sculpture was placed in the garbage dump, but the court said,

5  you can't sue under subsection B under recognized stature

6  because the work can be repaired; however, the plaintiff could

7  still sue under subsection A.

8          So there are two different subsections.  It is not

9  that if you don't win under one you can still try under A.

10          THE COURT:  Well, you know, the work, theoretically,

11  if preserved, could have been taken off the walls.

12          MS. TAJIKA:  No, it couldn't.  No, their damage

13  expert admits that it couldn't have been removed from the

14  building without -- without destruction.  They put it in --

15  they put it in their expert report that it couldn't have been

16  removed without destruction.

17          THE COURT:  What do you say about all that?

18          MR. BAUM:  Well, I say, Your Honor, that,

19  unfortunately, counsel is misguided on what the law is.  First

20  of all, this is a question of fact, there are two categories

21  that are available.  One is destruction, I'm simplifying it,

22  and one is a mutilation.  And the jury can make the

23  determination whether it's a mutilation or destruction.

24  Counsel is trying to make an argument --

25          THE COURT:  If it was destroyed, it was destroyed.

1  They all were destroyed.

2  MR. BAUM:  It is either -- it would be one or the

3  other.  And --

4  THE COURT:  Well, how could, if they're all

5  destroyed, how can it be one or the other?

6  MR. BAUM:  Because they weren't all destroyed.  Some

7  of them were mutilated.

8  MS. TAJIKA:  But what is the difference between

9  mutilation and destruction?

10  MR. BAUM:  That's what the statute calls for, and

11  that's a question of fact.

12  THE COURT:  One second.  Some were mutilated first

13  and then destroyed.

14  MR. BAUM:  Some were mutilated -- the question of

15  mutilation or destruction is not one that we can just sit here

16  and go through and say, yes or no.  The statute is somewhat

17  open, and that's -- that's a question of fact for the jury.

18  It is two sections that are available.  It would be one or the

19  other.  It's an alternative theory.

20  THE COURT:  One or the other in respect to each of

21  these works?

22  MR. BAUM:  The jury --

23  THE COURT:  They have to decide one or the other.

24  MR. BAUM:  I believe that's correct, Your Honor.

25  MS. TAJIKA:  Your Honor --

1          MR. BAUM:  Yes.  It's an alternative.  They have two

2    methods.

3          THE COURT:  Don't talk both at the same time.

4          MR. BAUM:  They have two methods.  There's two ways

5    for the plaintiff to proceed and prove their case.  One is the

6    mutilation --

7          THE COURT:  If it was mutilated, and that was

8    prejudicial to his or her honor, you don't have to show that

9    it was a recognizable --

10         MR. BAUM:  That's correct.  And if it was completely

11   destroyed, as counsel says it is, then it goes to the issue of

12   recognized stature, and we have that issue for the jury to

13   decide.

14         THE COURT:  So if you had this and it was completely

15   destroyed in one fell swoop, it wasn't mutilated, it was

16   completely destroyed, then they have to show it was a

17   recognized work of stature.

18         MR. BAUM:  Right.

19         THE COURT:  But if it was just mutilated, and then

20   they can say that the mutilation impacted by art and

21   reputation, I don't have to show that it was a recognized work

22   of stature, I have to just show that it was prejudicial to my

23   honor or reputation.

24         MR. BAUM:  That's correct.  And on the jury --

25         THE COURT:  I think that's right.

1          MR. BAUM:  And on the jury charge, what we -- that

2    we propose, there's an alternative means for that.  They go

3    either route.

4          THE COURT:  That sounds reasonable.

5          MS. TAJIKA:  Your Honor, no.  This court, this is an

6    Eastern District of Pennsylvania 2005 decision in *Hunter v.*

7    *Squirrel Hill Associates*, there are two different standards

8    given in 17 USC 106(A)(a)(3).  And the two different

9    standards, subsection A, the mutilation prong, subsection B is

10   the recognized stature prong.  That's the destruction prong.

11         Professor --

12         THE COURT:  You are telling -- I don't agree with

13   that.  You are telling me there's mutilation.  And let's

14   assume it was mutilated for two weeks or three weeks or four

15   weeks, there it was.  The artist name may be still there,

16   hypothetically, it was whitewashed, it was mutilated, and

17   affects the reputation.  You're telling me that if it was

18   ultimately destroyed, that they're not entitled to recover for

19   the period of time perhaps when it was mutilated?  That's your

20   theory?

21         MR. EBERT:  Yes.

22         THE COURT:  All right.  Now, Judge Block doesn't

23   agree.  The Circuit Court of Appeal will resolve that issue,

24   ultimately.  And I don't necessarily agree that the *Hunter*

25   case stands for what you want it to say.

22

1          MS. TAJIKA:  Well, Professor Patry, he is a

2    copyright treatise author, one way to distinguish between

3    mutilation and destruction is to determine whether the work

4    can be repaired.  If so, it has been mutilated, if that.  If

5    the work cannot be repaired, it has been destroyed.

6          All the works in this case have been destroyed,

7    so --

8          THE COURT:  I'm not so sure I agree with you.

9          Now let's move on.  So it's an A and B case as we

10   stand right now.

11         Now, how does that impact in terms of these

12   exhibits?  Are you going to have to show that it was

13   mutilated, and the mutilation was for a period of time, and it

14   was prejudicial to the honor or reputation of the artist.  How

15   are you going to establish that?

16         MR. BAUM:  It is two ways.  One is the photograph,

17   and two is the witness.  So the photograph speaks almost a

18   hundred percent to the issue of whether it is a mutilation or

19   a destruction.  And the witness then to the second element,

20   the prejudice to their honor or reputation, comes from the

21   witness.

22         THE COURT:  Yes.  Now you see, with all due respect

23   to Ms. Tajika, I'm not a distinguished professor, I'm not as

24   smart as the judge in the *Hunter* case, but it seems to me that

25   you can't obviate responsibility under A by ultimately

1   destroying the work and claiming that, you know, now they have

2   to establish that it was a recognizable work of art.  But you

3   can argue that to the Second Circuit Court of Appeals.  That's

4   my take of it.  Okay?  You're try to escape responsibility by

5   destroying it.

6           MS. TAJIKA:  But, Your Honor --

7           MR. EBERT:  I'm sorry.  Go ahead.

8           THE COURT:  You don't have to argue any more.  We

9   have other things to do today.  All right.

10          Now you have here -- we're clear about the exhibits.

11  So you will come back on Thursday, and you will tell me which

12  of these exhibits you think should not be part of this.

13  Because we have to start this trial next Monday.

14          And you may have to come back and spend all Sunday

15  here to shape this up, if need be.  So you get everything to

16  them by Wednesday, or maybe Tuesday.  Plaintiff?

17          MR. BAUM:  I would -- Your Honor, if I can do it as

18  it is ready, I probably can get some of them at each day.  The

19  problem is I have to assemble them.

20          THE COURT:  The defendant, they have to view these

21  things.  Now let's go through what you are going to put in

22  there so we can maybe make it clear.  You are not going to put

23  in these documents any decisions of the court.

24          Now, you want to put in other works of the artist,

25  right?  So let's talk about that.

24

1          MR. BAUM:  Right.  So the expert in the case,

2   Your Honor, who we're calling Renee Vara, is going to testify

3   that when you are determining recognized stature of a piece of

4   work, you don't just look to the piece of work.  You have to

5   know something about the artist.

6          You can't just look at a piece of work --

7          THE COURT:  Makes sense to me.

8          MR. BAUM:  So in order to know about the artist, you

9   have to see what their accomplishments were and what their

10  other work was.  And that's information that is in that

11  booklet, in addition to the photos in this particular case.

12         THE COURT:  Makes sense to me.  Once again, using my

13  good friend Pablo Picasso.  What if there's only one work of

14  his before the jury?  He painted this on the wall, all right,

15  and it was mutilated or destroyed.  That was the only work.

16  How would the jury know whether that was a recognized work of

17  art if they didn't know this is Pablo Picasso and he had, you

18  know, enormous reputation and he had masterpieces all over the

19  world?  Seems to me that's relevant.

20         MR. EBERT:  The law protects works of art.  It

21  doesn't protect artists.  The point of the statute is --

22         THE COURT:  It says it is a recognized work of

23  stature.

24         MR. EBERT:  Yes.  So what does that mean?  That

25  means that it is the artist who's recognized, or the piece of

1    work?  This protects pieces of work.

2            THE COURT:  I don't agree with you.  The experts

3    will testify about that, okay.

4            MR. EBERT:  May I go for one second to the articles,

5    the judge's decisions?  There are articles that they have -- I

6    don't know what's in there, but I know in their exhibit list,

7    that say, Jonathan Cohen, who is the curator of 5Pointz, which

8    was whitewashed, and there's a controversy and there's a

9    lawsuit, and he's claiming this.  How do you put that in front

10   of a jury?

11           THE COURT:  That's not going to be included.

12           MR. BAUM:  We are going to take that out,

13   Your Honor.

14           THE COURT:  We are making progress.  None of that is

15   going to be included.  None of the articles in the newspaper

16   about the lawsuit.  Because I don't want to have to keep you

17   here all day Sunday afternoon, Sunday night, Sunday in the

18   early evening, Sunday late.  We are going to go over each of

19   these things, but I have to have this done before the trial

20   starts.

21           MS. TAJIKA:  To your Picasso comment, Your Honor, I

22   will note that --

23           THE COURT:  I don't want to hear about comments now.

24   We want to move on.  So you have to get this to them -- today

25   is Friday.  You have, unfortunately, to work on the holidays,

1   and you are going to have to get them to them by Tuesday

2   night.  They are going to come back Thursday.  You are going

3   to talk to each other.  To the extent that you talk to each

4   other and follow my guidance, it is going to make life easier

5   for you.  To the extent that you are not able to do that, plan

6   to spend the whole weekend here morning, noon, and night,

7   before the trial starts.

8           MR. BAUM:  May I make one --

9           MR. EBERT:  May I ask that we get them in a

10  reasonable amount of time?  They were a week and a half late

11  in getting us their exhibit list.  In getting us the exhibits.

12  They are preparing these.  Why can't they produce what they

13  have --

14          MR. BAUM:  Your Honor --

15          MR. EBERT:  -- as they're ready.

16          THE COURT:  Stop it.  You can't both talk at the

17  same time.  You can't both talk at the same time --

18          MR. EBERT:  I understand.

19          THE COURT:  -- for obvious reasons.

20          I am giving you your marching orders.  You are going

21  to get this to them by Tuesday.  All of them.  By Tuesday.

22  You have today, you have Saturday, you have Sunday, and you

23  have Monday.  Tuesday they all go.  You should have been doing

24  this already.

25          They will then have an opportunity to look at them.

27

1   I assume they are going to be perfect, because you are going

2   to err on the side of caution.

3           MR. BAUM:  Yes, Your Honor.

4           THE COURT:  No articles in the newspapers about the

5   lawsuit.  Nothing from Judge Block about the lawsuit.  Just

6   the paintings and whatever, you know, support you can have

7   that show that these are recognized artists, that they have

8   other exhibits, other paintings.  You can do that.  The

9   experts are going to rely upon that.  Whatever the experts

10  rely upon in that respect, I'll allow the jurors to see that.

11          The defendant will have the opportunity to counter

12  that, and that's what trials are all about.

13          MR. BAUM:  Yes, Your Honor.

14          THE COURT:  Now what exhibits do you have?  So you

15  understand clearly, we will get together again Thursday, late

16  in the afternoon, and I assume you have 21 of these documents.

17          MR. BAUM:  Yes.

18          THE COURT:  And I assume they are not going to have

19  a lot of arguments about them.  But if there are, they will

20  tell me what they are, and we will take it from there.

21          Now, what is the defendant going to do with your 100

22  exhibits?  What are they all about?

23          MR. EBERT:  I'm sorry, what are they?

24          THE COURT:  What are your --

25          MR. EBERT:  They have the list of exhibits, and I'm

1    happy to go through any objections they have.

2         THE COURT:  I haven't looked at them.  Are there any

3    objections to their exhibits?

4         MR. EBERT:  There are.  Off the top of my head,

5    there's a few categories.  One is there are e-mails between

6    the former attorney representing the artist in the case, and

7    each other.  And there's also a category of tax returns and

8    tax materials, and we have made a motion in limine regarding

9    that information.

10         THE COURT:  We are going to talk about that.  But

11   they want actual damages.

12         MR. BAUM:  They want actual damages.

13         THE COURT:  Why should their tax returns not be

14   relevant?  You are looking for money based upon actual

15   damages, right?

16         MR. BAUM:  That is true.  I think the purpose of the

17   tax return was, from my understanding from the depositions,

18   was to try to impeach a number of the artists that they hadn't

19   filed, they hadn't listed their art, so it was for like an

20   impeachment purpose.  It waste just to show their income.

21         THE COURT:  What do you want them for?

22         MR. EBERT:  We're putting them in to show that some

23   of these artists, they made $20,000 a year, and the expert is

24   going to say these works of art are each worth $80,000 itself.

25   And we want to show that this is completely out of whack

1  with --

2        THE COURT:  You are asking for millions of dollars,

3  and if you have any evidence at all that shows that they never

4  really made much money from their work, it seem that's

5  relevant.  So, you know, as far as the tax returns are

6  concerned, it's going to be limited just to show whether they

7  reported on their tax returns any sale of -- anything at all

8  dealing with the works of art.  So you can ask them that

9  question on cross-examination, and you can use your tax

10  returns to impeach their testimony.

11        MR. EBERT:  Sure.

12        THE COURT:  Okay.  That sounds fair, right?  Because

13  you want 2.69 million in actual damages, but if their works of

14  art really were not saleable, and they never made any money at

15  all, I think it goes to the issue of whether or not they

16  recognize more substantial.  What's good for one is good for

17  the other.

18        MR. BAUM:  Yes, Your Honor.

19        THE COURT:  So it is ten to 5:00 now.  And we will

20  go over the defendant's exhibits.  What other categories are

21  you concerned about?  I haven't had a chance to study them.

22        MR. BAUM:  What popped out at me was just these

23  e-mail exchanges between the prior attorney and a number of

24  the plaintiffs in the case, and, to me, it seems like in that

25  instance, the prejudicial impact of the e-mails would outweigh

1    the probative value, and it's also a potential relevance --

2            THE COURT:  So let's do that on Thursday.  All

3    right?  You go through these hundreds, and you tell me which

4    ones you have objections.  To all hundred of them?

5            MR. BAUM:  No, we'll try to narrow the objections

6    down.

7            THE COURT:  Sit down with counsel now, and you can

8    start today, tomorrow, whenever.  I know you have a lot of

9    work to do, you want 21 plaintiffs to testify about 51

10   paintings.

11           MR. BAUM:  Yes, Your Honor.

12           THE COURT:  So you have to belly up to the bar here,

13   and you go through with the defendants and see if they have

14   any objections to any, and we'll talk about it on Thursday.

15   The tax returns will be used for cross-examination purposes,

16   okay.  I will allow them in the cross-examination, for tax

17   returns to be used for that purpose, all right.  That's all

18   that I think is relevant here.

19           MR. BAUM:  Your Honor, may I ask a couple of very

20   quick questions about just procedure, just to -- it will be

21   very helpful.

22           The first day, the 16th, when we are selecting the

23   jury.  My understanding is in civil cases Your Honor might

24   allow the plaintiffs and defendants to question the jurors

25   about --

1    THE COURT:  Why don't we finish with the substantive

2    things we have to do today.

3    MR. BAUM:  Yes.

4    THE COURT:  Give you as much information as I can,

5    okay?  You have these various -- we have various applications

6    and in limine applications.  And let me go through that right

7    now.

8    First, the plaintiffs want an adverse inference

9    based on spoliation.  I'm not going to give it.  Because it

10   seems that the VARA statute covers the ballpark, talking about

11   structural mutilation, and I don't think spoliation has

12   anything to do with this at all.  So you are not going to get

13   an adverse inference.  Now, you can make your record and take

14   an exception, to reserve your record for appellate purposes.

15   This may well be the daddy of all cases dealing with the

16   statute that a Circuit Court is going to dig its teeth into.

17   So I'm just calling balls and strikes here as best as I can.

18   And I think you now want the plaintiff to bar

19   evidence that the court told them that they had notice to take

20   pictures of the artwork before it was destroyed.  None of that

21   is going to go --

22   MR. EBERT:  Your Honor, may I speak to that?

23   THE COURT:  What?

24   MR. EBERT:  Your Honor, Jonathan Cohen was sitting

25   right next to you, and Your Honor stopped the trial, and said,

1   I want to tell you this right now.  I'm not going to let you

2   hold up the destruction of this building.  So you go to the

3   building, and you capture it however you'd like.  And if you

4   don't do it, Your Honor says, that will tell us something.

5           I want to say to the jury, they were told what your

6   decision was, and not a single one of them, Your Honor, not a

7   single one of them went to the building to try to photograph

8   it, to video it.  It is not about the artwork.  That's one of

9   our theories.

10          THE COURT:  You can question them as to whether they

11  photographed it, whether they took any steps at all to

12  preserve any of the paintings, to do whatever they did.  But I

13  don't think you have to tell them --

14          MR. EBERT:  It makes a huge difference, Your Honor.

15  If they were told, "this building is coming down, a judge said

16  this building is coming down, I'm telling you that, so if you

17  want to preserve these, go preserve them," and they don't do

18  it, not one of them does it, Your Honor, I think that's pretty

19  relevant to what these works of recognized stature really

20  meant to these people.

21          MR. BAUM:  So let's talk about the time frame.  The

22  temporary restraining -- you make that statement in court on

23  the 7th.  You withdraw -- you remove the temporary restraining

24  order on the 12th, and seven days later this art is destroyed.

25  None of the artists knew that the art was going to be

1  destroyed.  And in your summary -- in your decision for

2  summary judgment, you specifically outlined that there was

3  potential damages if the art was destroyed.  And there's a

4  90-day notice provision, under the VARA law.  It's -- you were

5  not -- I am sure the court was not overriding the statute.  It

6  is a 90-day registered notice to be given to the artists.

7  They admittedly were not given that notice.

8          THE COURT:  At the trial, we will see what the

9  testimony is, what the cross-examination is, but if they want

10 to say that they took this action because the judge said you

11 should take it or should not take it, that's what they want.

12 They want to testify that they were under a court -- the

13 defendant wants it to be known that the court told them they

14 have "X" amount of time to take the pictures down or to

15 preserve them.  Didn't I say that?

16         MR. EBERT:  Yes.

17         MR. BAUM:  You said it, Your Honor, but you were not

18 overriding the law.  You were not telling them that if they

19 didn't take certain steps in that seven-day period, not

20 knowing that the art was going to be destroyed.  And by the

21 way --

22         THE COURT:  I didn't say that you had to do it the

23 next day or the day after.

24         MR. BAUM:  Seven days later, it's destroyed.

25         THE COURT:  I didn't override their -- no reference

34

1    at all to what the judge instructed.

2         MR. EBERT:  Your Honor, the fact that these artists

3    knew that these works were going to be destroyed, Your Honor

4    said to them, "go do this," and they don't do it, Your Honor

5    said, you said --

6         THE COURT:  So now with all due respect, you are not

7    to have them -- you are not to mention that at all.  You have

8    your exception.  What I said, it is written down.  I wrote

9    opinions.  There's nothing in my opinions that said that VARA

10   is overridden by anything I wrote or anything I said.  I just

11   denied the preliminary instruction.  I did indicate that they

12   could be responsible for significant damages.  I ordered the

13   parties to try to resolve the matter.  I read over my

14   decisions again.  I never told them anything about the fact

15   that they had to do it in 90 days, 30 days, 40 days.  In any

16   event, VARA --

17        MR. EBERT:  It is not your decisions.  It is what

18   would happen in the course of the trial --

19        THE COURT:  We will see how it goes out.

20        MR. EBERT:  Okay.

21        THE COURT:  Let them testify.  You can ask the

22   questions.  I'll rule on it as I hear it happening in the real

23   world.  Okay?

24        Generally, I don't like to interject myself.  You

25   want me to give the opinion that I wrote to the jurors?

1          MR. EBERT:  No.  This is the one thing I want to

2    say --

3          THE COURT:  I will give them the opinion.

4          MR. EBERT:  I don't think that's appropriate.  But

5    the -- it is not in your opinion.  It is not in your opinion.

6    That's the point --

7          MR. BAUM:  We have no objection to the opinion being

8    given.

9          MR. EBERT:  That's the point, Your Honor.  It is not

10   in your opinion.  It is saying to these orders --

11         THE COURT:  Listen to what they say, all right?

12         MR. EBERT:  Okay.

13         THE COURT:  You can question them as to why they

14   didn't preserve the paintings.

15         MR. EBERT:  I will present that.  I know I have

16   their testimony, but it makes --

17         THE COURT:  Ask the question, and they're going to

18   give an answer, right?

19         MR. EBERT:  But it makes a huge difference that

20   Your Honor said, "I am letting them knock down this building.

21   If you want to preserve them, go do it now," and not a single

22   one did.

23         THE COURT:  You made your argument.  The judge has

24   to make his rulings.  We are not going to get into that issue

25   during the course of the trial.

1          We are not going to get into what -- because I may

2    have to explain to the jurors that, that I never said anything

3    at all about the 90-day notice, about VARA, about any of the

4    rights of the parties.  Just the denial of the preliminary

5    injunction.  That's all I did.

6          If you want to ask them questions about that, then I

7    am going to go into a lengthy explanation to the jurors.  You

8    don't want me to do that.

9          MR. EBERT:  It is completely different.  I am

10   talking about something completely different.

11         THE COURT:  So you will have a record here, and

12   that's my ruling.  All right?  We will see how it happens.

13   Let's see what they testify on direct.  And if they testify on

14   direct anything that's inconsistent, that's subject to

15   effective cross-examination, I'll allow it.

16         MR. EBERT:  Okay.  Thank you.  Thank you.

17         THE COURT:  I will give you some play, as to their

18   intent.

19         MR. EBERT:  Thank you.

20         THE COURT:  All right.  If they said that they

21   intended to do this, and listen to the judge, they may say

22   that.  They may say that.  "The judge didn't say this," "the

23   judge didn't say that."  "I was under the mistaken belief," or

24   whatever it was.  And then whatever they say, I can give a

25   limiting instructions to the jury, if necessary.

1          MR. EBERT:  Thank you.

2          THE COURT:  And that's how that will play out.  All

3   right?

4          And then one of the plaintiffs hinted -- Rezende

5   would like to come here to testify, but Brazil is not giving

6   him a visa.  We will allow it to be by video conference.

7          MR. BAUM:  Thank you.

8          THE COURT:  Now, the defendants' motions, defendant

9   wants to bar evidence of whitewashing from coming into

10  evidence.  We are not going to agree to that.  We are going to

11  allow that evidence of whitewashing, because I think it is

12  relevant that the plaintiffs argue that their artwork is

13  mutilated in a way that was injurious to their honor and

14  reputation, and, therefore, the white washing will be allowed

15  to come in.

16         The plaintiffs are not going to be able to ask for

17  the emotional distress compensation, because my ruling is that

18  they are not available under the Copyright Act.  You have your

19  exception.  You can make that point in the Circuit Court of

20  Appeals.  It is just one court that made reference to that,

21  and I think that the Ninth Circuit is pretty much thumbs down

22  on that.  I don't think emotional distress is --

23         MR. BAUM:  May I make one point, though, Your Honor?

24         THE COURT:  You can make it.

25         MR. BAUM:  Just that there was a case, there was an

1  appellate case that was relied on by the Smith court.  It was

2  the *Davis v. Gap* case.  It was a Second Circuit case.  And,

3  basically, what it said was, is that damages under the

4  Copyright Act should be broadly construed to address victims

5  of copyright infringement.  And that is why the lower court in

6  that 2008 case went ahead and found that emotional distress

7  damages applied.

8            The court subsequently --

9            MS. TAJIKA:  The Davis --

10           THE COURT:  But the Ninth Circuit has held

11  otherwise.

12           MR. BAUM:  But the Ninth Circuit has held otherwise.

13  It is not the Second Circuit.  So, I mean, it's a --

14           THE COURT:  I don't believe the Second Circuit has

15  ruled on that issue.

16           MR. BAUM:  They haven't.

17           MS. TAJIKA:  It has not.

18           MR. BAUM:  It's a novel issue.

19           THE COURT:  That's why I'm making a ruling.  It is a

20  novel issue.  That's what I am getting paid the big bucks for.

21  No emotional distress damages.  You win some and you lose

22  some.

23           MR. EBERT:  I am happy to win any.

24           THE COURT:  Okay.  Now, I think that pretty much

25  covers a little bit of territory to give you folks a fair

1    sense of how this case is going to unfold.  Is there anything

2    else you want to talk about now?  We'll see you again

3    Thursday.  We are going to look at your exhibits, the

4    defendants' exhibits.  I hope we are not going to have to

5    spend a lot of my time on it.  I can give you some broad

6    instructions now, which will harness our energies in terms of

7    preparing these wonderful exhibits, which will be very helpful

8    I think, and, hopefully, you folks will be able to talk to

9    each other, something that has not effectively been done in

10   terms of trying to resolve this litigation before, and that we

11   won't have to spend an inordinate amount of time Thursday

12   going over all these exhibits.

13            MR. BAUM:  May I ask a few questions just

14   procedurally when we start the trial.

15            THE COURT:  We will talk about that.  But I just

16   want to deal with some of these substantive issues now.  We

17   have come a long way.  I'm allowing A and B claims.  We

18   understand that.

19            MR. EBERT:  Can I just raise one thing as to their

20   witnesses?  What the expert witnesses did is they went out and

21   collected letters from professors or people elsewhere, and now

22   what they want to do -- and they -- the expert puts that in

23   the witness report, the expert report.  Now they want to call

24   those same people who we never had a chance to cross-examine,

25   and call them as experts, in effect, to say, to backup what

1   the expert -- their expert is going to testify to.  They got

2   the letters, and now they say, okay, we got the letters.  Now

3   we want the real person here.  You never had a chance to

4   cross-examine them during discovery, but now we want to put

5   them on the stand.

6            THE COURT:  You will have ample opportunity to

7   cross-examine the experts, and you can bring all that out in

8   the cross-examination.

9            MR. EBERT:  They are not disclosed experts, they're

10  not --

11           MR. BAUM:  They're not testifying as experts.

12           THE COURT:  The experts, who are going to be

13  testifying, are going to rely upon whatever they rely upon.

14           MR. EBERT:  A letter from someone else as hearsay?

15  That's going to come into this trial?

16           MR. BAUM:  It's not hearsay.  That's why they're

17  being called into the trial, and defendants had every ability

18  to take depositions --

19           THE COURT:  I don't know what letters you are

20  talking about.

21           MR. EBERT:  I will show you, Your Honor, when we

22  come back.  I will show you what they are doing.  Please.

23           THE COURT:  Tell me, show me.

24           MR. BAUM:  Their expert --

25           THE COURT:  Is going to say, here's my opinion,

1   here's the basis of my opinion.

2           MR. EBERT:  And the basis of my opinion is this

3   other person who I went to and said, please write me a letter

4   saying how wonderful 5Pointz was.  That's what --

5           MR. BAUM:  That's not what they said.

6           MR. EBERT:  Excuse me.  That's what the expert did,

7   and now they want to bring those people who wrote those

8   letters, to give expert testimony.  They are not here for fact

9   witnesses.

10           THE COURT:  The witnesses --

11           MR. BAUM:  They are not giving expert testimony.

12   They're giving --

13           THE COURT:  Are they going to be called as

14   witnesses?

15           MR. BAUM:  Yes.

16           THE COURT:  And what are they going to testify

17   about?

18           MR. BAUM:  They're going to testify that the

19   contents of the letter are true and accurate, and they're

20   going to testify about what's in the context of those letters.

21           They were part of the expert report, counsel had

22   them, the names were disclosed.  What they're going to say is

23   practically fully set forth in each of those letters.  They

24   could have took depositions.  They decided not to.  There's no

25   reason to exclude.

1          THE COURT:  The expert who relied upon those

2     letters, you have full opportunity to cross-examine the

3     experts.  These people want to come and testify as to the

4     basis for that letter, I will allow them to do that.  I mean,

5     I have to be a little flexible here because we are dealing

6     with kind of nebulous concepts here of what constitutes a

7     recognized work of art.  There's not a lot out there in terms

8     of the management in a trial of this nature.

9          So I am going to be a little flexible and allow that

10    testimony.  And you're be able to cross-examine them, okay?

11         What else?

12         MR. BAUM:  Couple jury questions, and the first day

13    of trial.  May we ask the jurors some questions, or is that

14    all going to be done through you, Your Honor?

15         THE COURT:  Well, that's a good question.  How would

16    you like to do it?

17         MR. BAUM:  I would like to question the jurors.

18         MR. EBERT:  Can we submit questions to you, we would

19    like you to ask?  I mean, I think this jury selection could be

20    done very quickly.  If we have to now start asking questions

21    that Your Honor can ask the same way to them --

22         THE COURT:  Here's what I always do.  I like to give

23    lawyers the opportunity to be lawyers.

24         MR. EBERT:  Okay.

25         THE COURT:  So we will have general questions, but

43

1    the jurors will answer -- Mr. Innelli, have you given a --

2                THE COURTROOM DEPUTY:  I believe so, but I will give

3    it to them again.

4                THE COURT:  You have about 12 questions or so.  If

5    any of the generic questions that can be added to that list of

6    12, one or two, I will ask those questions, and then after

7    that, I give the lawyers an opportunity, ten minutes, five

8    minutes, whatever, to follow up with any questions.  "Juror

9    number 1, you said this," blah, blah, blah, blah, blah.  You

10   can further inquire.  But you are not going to abuse the

11   privilege of being able to do that.

12               MR. BAUM:  May we ask a few of our own questions,

13   Your Honor?  Or is it can we submit them to you to ask?

14               THE COURT:  No, no.  You can ask questions, whatever

15   you want.  But if you start, you know, pushing the envelope,

16   and doing things that are improper, we will just start the

17   trial all over again.  I have never had a problem in 23 years

18   with giving lawyers the opportunity to be lawyers.  They never

19   abused the privilege.  Logical questions.  "Juror number 3,

20   you said this.  Was your uncle a painter?  Did he exhibit his

21   paintings in any galleries?"  I mean, those would be follow-up

22   questions that would logically flow from the questions I am

23   going to ask.

24               I think we may want to consider adding, Mike, to the

25   list of 12, one or two additional broad questions, which I

1    will ask about, you know, obvious things dealing with whether

2    they have any artists in their family and stuff like that.  I

3    will add that.  And, Aaron, you just make a note of that

4    because that will be something that we want to ask all the

5    jurors, anyway, right?  If any of you folks have art

6    displaying, have you been involved in the business, stuff like

7    that.  I will ask a couple of those questions that are

8    logical, and you can follow up after that with individual

9    questions.

10            MR. BAUM:  May the jury take notes in this case,

11   since we have 21 plaintiffs and an extensive amount --

12            THE COURT:  I always tell them, I give them

13   preliminary instructions, they can take notes if they want to.

14            MR. BAUM:  The first day of the trial, the 16th,

15   should we be prepare, obviously, to do openings statements?

16   Should I have witnesses in court on that day?  Or should they

17   be available for the following day?

18            THE COURT:  Well, depends on how long it takes to

19   select the jury, obviously.  But, generally, what happens in

20   civil trials is I'm able to select a jury in the morning or

21   after lunch break.  And I don't put any inordinate pressure on

22   the lawyers.  If it takes a little longer, fine.  I am not

23   really interested in being the fastest judge to pick a jury in

24   the courthouse.  I think that's inappropriate.  We will see

25   how it goes, you never know.  But, you know, I usually can

1    pick a jury within the morning.

2            Then we give them a lunch break, we come back, I

3    give them some preliminary instructions, I talk to them about

4    note taking and general things.  And sometimes we have time to

5    have opening statements that day, sometimes we don't.  But I

6    think you can fairly assume that we are not going to have any

7    live witnesses testifying until Tuesday.

8            MR. EBERT:  May we ask that they tell us which

9    witnesses, which the first batch of six witnesses --

10           THE COURT:  I expect counsel professionally

11   cooperating with each other, so the jurors don't have any

12   downtime, so that we can effectively go from 10:00 to 5:00.

13   And so you have to really let everyone know what witnesses you

14   have.  Because if you tell me that you have no more witnesses

15   and it is 2:00, we are going to have a problem.

16           MR. BAUM:  Yes.  We are doing our best.  We have

17   witnesses --

18           THE COURT:  Let your adversary know in advance --

19           MR. BAUM:  Yes.

20           THE COURT:  -- who you are going to be calling, so

21   they have an opportunity to know that and not be blindsided.

22   So you will tell them, you know, who you are going to have,

23   the first batch of six witnesses, right?

24           MR. BAUM:  Yes, Your Honor.

25           THE COURT:  You can do that, certainly a day or two

1    in advance.

2              MR. BAUM:  Yes.

3              THE COURT:  You can break it up now, you can say,

4    here's the first six.  We are going to allow you to do it that

5    way.  I guess 21 divided by 6 doesn't work, so --

6              MR. BAUM:  How about 7?

7              THE COURT:  7 at a time.

8              MR. BAUM:  7 at a time.  That seems --

9              THE COURT:  So you will have three batches, okay.

10   And you let your adversary know who those seven are going to

11   be.  Break them down now.  Let them know this week.  The first

12   seven will be so and so, the second seven will be the last

13   seven.  You should be able to do that.  That will be fair to

14   them in terms of being able to properly prepare for witnesses.

15             MR. BAUM:  Your Honor, I have witnesses coming at

16   different times to testify.  Would it be all right during the

17   openings, since they are not all going to be able to be here

18   during the opening, if I were to put a photograph and their

19   name up on the screen to introduce them, since they can't all

20   physically be here --

21             THE COURT:  Of the plaintiffs, you mean?

22             MR. BAUM:  Of the plaintiffs on the first day.

23             THE COURT:  You can do that, I guess.

24             MR. BAUM:  Okay.

25             THE COURT:  They are going to all be here anyway, so

47

1    you want to show it before.

2             MR. BAUM:  That's all we have.

3             THE COURT:  So, Ms. Tajika, Mr. Ebert, what would

4    you like to know?  Anything in particular?

5             MR. EBERT:  I think we've -- I think we've covered

6    it.  I think we'll come back on Thursday, and if we have

7    objections over the exhibits, then we'll talk about it.

8             THE COURT:  I am just trying to be instructive, as

9    best as I can, to both of you folks, so we have a smooth trial

10   so it won't last forever.  And it may well be this takes a

11   couple of weeks.  I don't know how you can avoid it.  Let the

12   jurors hear through the experts.  Let the experts be

13   cross-examined.  That's what jury trials are all about.

14            MR. EBERT:  I am not fighting that.  I am not

15   fighting that.

16            THE COURT:  Let the jurors know that these people

17   didn't make any money from their art.  Let them know that they

18   are not in the Louvre museum.  All right?  Let it all come

19   out.  That's what trials are all about.  And then the jurors

20   can be -- they can decide whether they credit this expert or

21   they credit your expert.

22            MR. EBERT:  I don't mind the experts.  I mind people

23   that they put letters in from, annexed to an expert report,

24   and now say, I am going to call that person as a fact witness?

25   A fact of what?  As a fact to tell us what?  What facts are

48

1    they going to testify to?  They are going to say, 5Pointz was

2    wonderful, and it's awful that it's gone.  That's what each

3    one of them is going to say.

4           THE COURT:  You may be able to cross-examine them.

5    I may even ask some questions, and I may embarrass them.

6           MR. EBERT:  I just want to make clear, I am not

7    fighting about experts, I'm talking about people who were here

8    because they put in a hearsay letter --

9           THE COURT:  You are dealing with reputation.  So we

10   have -- actually, in criminal law, we have people testify

11   about people's reputation all the time.  Do they have

12   reputation in the community?  What do you base your answer on?

13   We do that all the time.

14          MR. EBERT:  You don't let hearsay letters in to do

15   that, right?

16          MR. BAUM:  It is not a hearsay letter when the

17   witness is in court.  It is not hearsay anymore.

18          MR. EBERT:  We'll demonstrate --

19          MR. BAUM:  It's hearsay if they're not in court.

20          MR. EBERT:  We'll demonstrate what --

21          THE COURT:  You can cross-examine that.  The

22   person's going to testify, and his testimony is being relied

23   upon by the expert.  I think that flows okay.

24          MR. EBERT:  I am not -- I think you have ruled.

25          THE COURT:  Let's see how it works in the real

1  world.

2          MR. EBERT:  Thank you.

3          THE COURT:  All right.  This is how we get started.

4  And it's an interesting case.  It is going to get a lot of

5  attention, I think.  The public's going to be interested in

6  this case.  They were interested in it already.  I suspect

7  they are going to continue having an interest in this case.

8  It is just the nature of the case.

9          You know I was hoping that the case would be

10 resolved.  I almost begged you to try to resolve the case.

11 But you know when you go to trial before a jury, who knows

12 what's going to happen.  That's why we try to avoid that,

13 because to some extent a jury determination is a bit of a crap

14 shoot.  Someone's going to walk away probably very unhappy.

15 Just the nature of the beast.  That's why we try to get you to

16 settle it, because you are better off coming to a resolution

17 yourself than to run the risk of eight people deciding what

18 your fate is going to be, if you can avoid that.  If you

19 can't, that's what we are here for.

20         It will all work out.  I think this is a very good

21 way of presenting your case, by the way.  Make sure you don't

22 load this up with things I am not going to be happy with.

23         MR. BAUM:  Yes, Your Honor.

24         THE COURT:  Err on the side of caution.

25         MR. BAUM:  Yes.

50

1      THE COURT:  If you want to show that the work is in

2   the Louvre, fine.  But if you are going to put things in here

3   about articles written in the newspaper, that's not fine.

4      MR. BAUM:  Yes, Your Honor.

5      THE COURT:  Unless it is professionally reviewed,

6   yes.  I can understand that.

7      MS. TAJIKA:  Excuse me.  Can we expect to receive

8   the binders by 5:00 p.m. on Tuesday?

9      THE COURT:  I certainly would hope so.

10      MS. TAJIKA:  Thank you, Your Honor.

11      MR. BAUM:  Thank you, Your Honor.

12      MR. EBERT:  Have a good weekend.

13      (WHEREUPON, at 5:11 p.m., the proceedings were

14   concluded.)

15

16

17                      * * * * *

18            **REPORTER'S CERTIFICATE**

19      I, ANNETTE M. MONTALVO, do hereby certify that the

20   above and foregoing constitutes a true and accurate transcript
     of my stenographic notes and is a full, true and complete

21   transcript of the proceedings to the best of my ability.

22      Dated this 11th day of October, 2017.

23   /s/Annette M. Montalvo
     Annette M. Montalvo, CSR, RDR, CRR

24   Official Court Reporter

25

Annette M. Montalvo, CSR, RDR, CRR
Official Court Reporter