UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------x
JONATHAN COHEN, SANDRA                    Case No. 13-CV-05612(FB)(RLM)
FABARA, STEPHEN EBERT, LUIS
LAMBOY, ESTEBAN DEL VALLE,
RODRIGO HENTER DE REZENDE,
DANIELLE MASTRION, WILLIAM
TRAMONTOZZI, JR., THOMAS
LUCERO, AKIKO MIYAKAMI,
CHRISTIAN CORTES, DUSTIN
SPAGNOLA, ALICE MIZRACHI,
CARLOS GAME, JAMES ROCCO,
STEVEN LEW, FRANCISCO
FERNANDEZ, and NICHOLAI KHAN,

                    Plaintiffs,

        -against-

G&M REALTY L.P., 22-50 JACKSON            **DECISION**
AVENUE OWNERS, L.P., 22-52
JACKSON AVENUE, LLC, ACD
CITIVIEW BUILDINGS, LLC, and
GERALD WOLKOFF,

                    Defendants.
----------------------------------------------------x

MARIA CASTILLO, JAMES COCHRAN, Case No. 15-CV-3230(FB)(RLM)
LUIS GOMEZ, BIENBENIDO GUERRA,
RICHARD MILLER, KAI
NIEDERHAUSEN, CARLO NIEVA,
RODNEY RODRIGUEZ, and KENJI
TAKABAYASHI,

                    Plaintiffs,

        -against-

G&M REALTY L.P., 22-50 JACKSON
AVENUE OWNERS, L.P., 22-52
JACKSON AVENUE, LLC, ACD
CITIVIEW BUILDINGS, LLC, and
GERALD WOLKOFF,

                    Defendants.

------------------------------------------------x

*Appearances:*

*For the Plaintiff*
ERIC BAUM
ANDREW MILLER
Eisenberg & Baum LLP
24 Union Square East
New York, NY 10003

*For the Defendant*
MEIR FEDER
Jones Day
250 Vesey Street
New York, NY 10281

DAVID G. EBERT
MIOKO C. TAJIKA
Ingram Yuzek Gainen Carroll &
Bertolotti, LLP
250 Park Avenue
New York, NY 10177

**BLOCK, Senior District Judge:**

On February 12, 2018, I issued my decision granting plaintiffs $6,750,000 as statutory damages for the willful destruction of 45 of plaintiffs' 49 works of visual art by defendant Gerald Wolkoff ("Wolkoff"). *Cohen v. G&M Realty L.P.*, 2018 WL 851374, at *2 (E.D.N.Y. Feb. 12, 2018) ("*Cohen II*").[1] Defendants now move

---

[1] The decision incorrectly states: "Plaintiffs, 21 aerosol artists, initiated this lawsuit over four years ago." *Cohen II*, 2018 WL 851374, at *1 (E.D.N.Y. Feb. 12, 2018). However, only 13 of the 21 artists were named in the original complaint; of

2

pursuant to Federal Rules of Civil Procedure 52(b) and 59(a) "to set aside the Court's findings of fact and conclusions of law and grant a new trial or, alternatively, to vacate the judgment in plaintiffs' favor and enter judgment for defendants, or, alternatively, for remittitur." Def.'s Br. at 1. The essence of their motions is that none of plaintiffs' art qualified as works of "recognized stature" under the Visual Artists Rights Act of 1990 ("VARA"), and that, in any event, there was no basis for the Court to find that Wolkoff had acted willfully and award the full extent of allowable statutory damages under VARA.

"[A] trial court should be most reluctant to set aside that which it has previously decided unless convinced that it was based on a mistake of fact or clear error of law, or that refusal to revisit the earlier decision would work a manifest injustice." *LiButti v. United States,* 178 F.3d 114, 118 (2d Cir. 1999) (citing *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)). Under this standard, there is no basis to grant the defendants' motions. But since the case has generated a considerable amount of public interest and is bound for the circuit court of appeals, the public and the appellate court should have the fullest explication of the bases for my decision. Thus, I now cite "chapter, book, and verse" in the Appendix in support of my

---

the remaining, one was added to the second amended complaint on June 17, 2014, DE64, and the remaining seven were plaintiffs in the related *Castillo v. G&M Realty L.P.* litigation, 1:15-cv-3230(FB)(RLM), which was filed in 2015 but tried simultaneously with the original *Cohen* action.

findings that the 45 works of art were of such stature.

Moreover, defendants now argue that Wolkoff was warranted in immediately destroying the plaintiffs' works of art because I supposedly "gave him permission to destroy" them, Def.'s Br. at 30, when I "denied plaintiffs' preliminary injunction motion," Def.'s Br. at 28. Although my willfulness determination was drawn from the facts adduced at the trial, defendants have opened the door to what transpired at the hearing by putting the preliminary injunction proceeding in play. As now explained, it reinforces my willfulness determination and justification for imposing the maximum allowable statutory damages.[2]

## Willfulness

### A

As I wrote in my decision, "[i]f not for Wolkoff's insolence, [the maximum statutory] damages would not have been assessed" since "[i]f he did not destroy 5Pointz until he received his permits and demolished it 10 months later, the Court would not have found that he had acted willfully," and "a modest amount of statutory

---

[2] "It is settled, of course, that the courts, trial and appellate, take notice of their own respective records in the present litigation, both as to matters occurring in the immediate trial, and in previous trials or hearings." *2 McCormick on Evidence* § 330 Facts Capable of Certain Verification (7th ed. 2016). "Although not required to take judicial notice, courts often recognize part of the record in the same proceeding or in an earlier stage of the same controversy." *1 Weinstein's Federal Evidence* § 201.12 Facts Capable of Ready and Accurate Determination (2018). The Court takes judicial notice of these proceedings for the purpose of responding to Wolkoff's contentions.

damages would probably have been more in order." *Cohen II*, 2018 WL 851374, at

*19. Granted, my finding of willfulness was triggered by Wolkoff's decision to

whitewash the plaintiffs' art as soon as I denied their motion for preliminary

injunctive relief rather than wait until the buildings were ready to be torn down. But

in doing so, he acted "at his peril." *Jones v. Sec. and Exch. Comm'n,* 298 U.S. 1, 17-

18 (1936). He was represented by skilled counsel[3] who presumably advised him of

the well-established principles governing the denial of the "extraordinary and drastic

remedy"[4] of a preliminary injunction, and that "[t]he judge's legal conclusions, like

his fact-findings, are subject to change after a full hearing and the opportunity for

more mature deliberation. For a preliminary injunction . . . is by its very nature,

interlocutory, tentative, provisional, ad interim, impermanent, mutable, not fixed or

final or conclusive, characterized by its for-the-time-beingness." *Hamilton Watch Co.*

*v. Benrus Watch Co.*, 206 F.2d 738, 742 (2d Cir. 1953).

　　But regardless of what advice his lawyer may or may not have given him,

Wolkoff was bent on doing it his way and could not wait until I rendered my written

decision before destroying plaintiffs' works. As he blatantly acknowledged, "That

---

[3] *See N.A.S. Import. Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 253 (2d Cir. 1992) (finding willfulness where defendant's "excuse evaporated once [defendant] hired an attorney").

[4] *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (quoting 11A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2948, p.129 (2d ed. 1995) (footnotes omitted)).

was the decision I made. I would make the same decision today if that happened today." *Cohen II*, 2018 WL 851374, at *19.

As I pointed out in my decision, "with a fully developed record, permanent injunctive relief might have been available under the literal reading of VARA," *Cohen II*, 2018 WL 851374, at *17 n.20, and Wolkoff, as an astute real estate developer, may have been "willing to run the risk of being held liable for substantial statutory damages rather than to jeopardize his multimillion dollar luxury condo project," *id.*

There were, therefore, two dynamics at play throughout this litigation, as identified during the preliminary injunction hearing and in my decision denying injunctive relief: First, given "the transient nature of plaintiffs' works," I would not preclude Wolkoff from developing his property and demolishing 5Pointz. *Cohen v. G&M Realty L.P.*, 988 F. Supp. 2d 212, 227 (E.D.N.Y. 2013) ("*Cohen I*"). But second, "[s]ince, as defendants' expert correctly acknowledged, VARA protects even temporary works from destruction, defendants [were] exposed to potentially significant monetary damages if it [were] ultimately determined after trial that the plaintiffs' works were of 'recognized stature.'" *Id.* In that latter regard, I cautioned that "[t]he final resolution of whether any do indeed qualify as such works of art [was] best left for a fuller exploration of the merits after the case [had] been properly prepared for trial." *Id.* at 226.

The minutes of the three-day preliminary injunction hearing make it perfectly apparent that, although I was impressed by what the plaintiffs accomplished at 5Pointz, I was sensitive to Wolkoff's plight because he was supportive of the plaintiffs' art and had made it clear to them that the day would come when 5Pointz would be demolished. Why, then, did I turn against him four years later after the extensive three-week trial which, unlike the three-day preliminary injunction hearing, fully developed the law and facts? The answer is that, in addition to his incredible rationales for immediately whitewashing the plaintiffs' art works—essentially, that he was doing it in the artists' best interests—I found out at the trial that Wolkoff had misled me at the preliminary injunction hearing. If he had not done that, I would not have rendered the same decision following that hearing.

To begin, there was never any doubt in my mind from defendants' submissions opposing preliminary injunctive relief, and his counsel's representations during the hearing, that Wolkoff had to demolish 5Pointz at once or run the risk of losing his condo project. I had issued a temporary restraining order ("TRO") and was contemplating extending it to give the City's Landmark Preservation Commission ("LPC") another opportunity to decide to preserve 5Pointz. I asked counsel, "[I]s there a view of the case where I can give the authorities an opportunity to reflect upon that by staying the implementation of my denial of the preliminary injunction? . . . It seems I have the authority to hold it in abeyance for a period of time." Preliminary

Injunction Hearing ("PI"), Nov. 8, 2013, HTr. at 61:4-6; 62:1-2.[5] In response, defendants' counsel submitted a letter on November 11 opining that the TRO, which was due to expire the next day, could not be further extended under the law. Def's. Letter, Nov. 11, 2013, DE32, at 1-3. Defendants were correct. Therefore, I was pressed to issue the terse order the next day, upon which Wolkoff relies for his reckless and irresponsible behavior.[6]

Significantly, the letter further stated, "As explained in defendants' papers opposing the preliminary injunction motion, defendants stand to lose hundreds of millions of dollars in tax credits and benefits if the project is not completed within the required time frame and, in order to meet those constraints, asbestos removal must begin now." *Id.* at 3 (footnotes omitted).

The letter referenced several affidavits which had been attached to defendants' opposition to the initial motion for an Order to Show Cause ("OTSC"), including one from Wolkoff, which his counsel had referenced during the hearing:

> MR. EBERT: But the other thing I want to just point out, as we put in the affidavit . . . the timing of this thing is meaningful, and if it gets held up –

---

[5] "HTr" refers to the transcript of the preliminary injunction hearing, which occurred on November 6, 7, and 8.

[6] The Order stated in its entirety: "Plaintiffs' motion for a preliminary injunction is denied. The temporary restraining order issued on October 17, 2013, and extended on October 28, 2013, is dissolved. A written opinion will soon be issued." Order Denying Preliminary Injunction, Nov. 12, 2013, DE34.

| THE COURT: | I think you said December. You have the wrecking crews coming when? |
|---|---|
| MR. EBERT: | *We have to get the place demolished by the end of December.* |
| MS. CHANES:[7] | Actually, I believe Mr. Wolkoff testified that there are tenants in place into January 2014. |
| MR. EBERT: | There are portions that can be done way before then. There's a lot of buildings there." |

HTr. at 62:11-23, Nov. 8, 2013 (emphasis added).

Wolkoff's affidavit, sworn to October 17, 2013, which I had read during the

hearing, stated, in relevant part:

> 22. As explained in the accompanying affidavits of Jay Seiden, Israel Schechter, and Linda Shaw, attorneys assisting G&M Realty on the Project, phases of the Project must be completed before the [tax] statutes expire, or else G&M Realty will lose the benefits of hundreds of millions of dollars in tax exemptions and benefits. And as Peter Palazzo, our Construction Manager for the Project, explains in his affidavit, in order to meet these critical deadlines, we are scheduled to start asbestos removal within the next three to four weeks, with demolition of the building scheduled to be completed by the beginning of 2014 and construction to start in April of 2014.

> 23. The damages that G&M Realty will suffer if the Project is delayed include the loss of 259 million dollars in 421a tax benefits (as explained by Seiden) and the loss of 35 million dollars in tax benefits under the Brownfield Cleanup Program (as explained by Shaw). In addition, G&M Realty pays 389,000 dollars in annual taxes on the Property, and annual maintenance charges (heat, electric and salaries) totaling 245,000 dollars. The longer these carrying charges continue without G&M realizing any income from the Property, the greater the loss G&M Realty will sustain.

---

[7] Ms. Chanes was plaintiffs' prior counsel.

24. If G&M Realty loses these critical tax benefits and incurs these additional losses, *the Project will no longer be economically viable. We will be forced to reassess whether to proceed at all, and may have to simply scrap the Project.* A great deal of work has been done over the past years to put G&M Realty in a position to qualify for these tax-related benefits because we recognized that it might not be possible without them to proceed with our plans. *I can assure the Court that the effects of losing these benefits will be devastating and I highly doubt we would be able to proceed if we lose these benefits.*

25. The process of vacating the Property is approximately 85% completed. 99% of the tenants will vacate by November 30, 2013 and all residential and commercial tenants will be displaced from the Property by no later than January 5, 2014, which will leave us in the position of realizing no revenue from the Property until the Project starts to become occupied.

Affidavit of Gerald Wolkoff in Opposition to Application for Temporary and Preliminary Injunctive Relief ¶¶ 22-25 ("Wolkoff Affidavit") (emphasis added).

But at the trial four years later, I learned that Wolkoff knew that he had never applied for the requisite demolition permit until at least four months after he destroyed the plaintiffs' works of art. As plaintiffs' counsel adduced during his cross-examination of Wolkoff:

MR. BAUM: So the question is did you advise the Court during that proceeding that you had to take the building down by the end of December 2013, early January 2014?

MR. WOLKOFF: Yes. As fast as I can . . . .

Trial Tr. at 2027:25-2028:3.

MR. BAUM: In fact, you didn't take the building down in December of 2014 [sic]; correct?

MR. WOLKOFF:   Correct.

MR. BAUM:   You didn't obtain the demolition permit until approximately March of 2014?

MR. WOLKOFF:   Correct.

Trial Tr. at 2028:9-14.

MR. BAUM:   But you told the Court that you were going to demolish it by the end of December and start construction two or three months later; correct?

MR. WOLKOFF:   That's correct. That was the intent, yes.

Trial Tr. at 2929:16-19.

MR. BAUM:   There was no way to take it down in December, correct, because you didn't even have the permit until March; right?

MR. WOLKOFF:   I thought I would get the permit sooner.

MR. BAUM:   When did you apply for the permit?

MR. WOLKOFF:   I can't remember the date.

MR. BAUM:   Was it not in March of 2014?

MR. WOLKOFF:   Well, I probably had my expediters or people trying to get it way before.

. . .

MR. BAUM:   The application was filed in March; is that right?

MR. WOLKOFF:   I don't know.

MR. BAUM:   Can I show you a document that might refresh your recollection?

MR. WOLKOFF:   I don't doubt it.

THE COURT:   *So you accept the fact that the application for the demolition of the building was filed in March of 2014?*

MR. WOLKOFF:   *Yes.*

Trial Tr. at 2030:11-2031:6 (emphasis added).

MR. BAUM:   Did you also state in your affidavit that, if you didn't take the building down by the end of December 2014 [sic], you would lose millions of dollars?

MR. WOLKOFF:   It is a possibility, yes.

MR. BAUM:   You didn't say it was a possibility in your affidavit, did you?

Trial Tr. at 2031:12-17.

MR. BAUM:   You didn't lose hundreds of millions of dollars; correct?

MR. WOLKOFF:   No.

MR. BAUM   *And you were aware that the Court was relying on this affidavit in making its decision in this case; correct?*

MR. WOLKOFF:   No, it was an affidavit that I put in. I didn't know— there was [sic] other affidavits, I imagine, that was [sic] put into the courts for them to make a decision.

THE COURT:   It was one of the things.

MR. WOLKOFF:   *Yeah, it was one of the things.*

Trial Tr. at 2034:13-21(emphasis added).

If I knew that at the time I rendered my decision denying, without qualification, plaintiffs' preliminary injunction application, I would have issued a different decision: *I would have granted the injunction until such time that the buildings were demolished.*[8]

Wolkoff's egregious behavior was compounded by his incredible testimony during the trial that he was justified in whitewashing the plaintiffs' works of art "in one shot instead of *waiting for three months*[9]] and them going to do something irrational again and getting arrested." Trial Tr. at 2059:1-6 (emphasis added). As explained in my decision, there was simply no basis for that testimony. *See Cohen II*, 2018 WL 851374, at *17. Tellingly, he no longer took the position that he had put forth during the preliminary injunction hearing that he "may have to simply scrap the [condo] Project" if the buildings were not immediately demolished. Wolkoff Affidavit ¶ 24.

Equally incredible was Wolkoff's other justification for the whitewash: "[T]hat

---

[8] "Especially in fast-paced, emergency proceedings like those at issue here, it is critical that lawyers and courts alike be able to rely on one another's representations." *Azar v. Garza*, — S. Ct. —, 2018 WL 2465222, at *2 (June 4, 2018).

[9] Wolkoff's reference to "waiting for three months" shows that he was aware of the 90-day notice provision in VARA to allow the artists time to remove or otherwise preserve their works, reflecting once again his callousness and disregard for the law.

it would be better for the plaintiffs to lose their works quickly." *Cohen II*, 2018 WL 851374, at *18. Specifically, he testified: "So I said why should these young people, or the people themselves, get into problems and end up going to court or to jail. So I figured the quickest way to do it is get men, whitewash it and get it over. It would be better for myself *and I believed it would be better for them,* and would stop confrontation." Trial Tr. at 2042:24-2043:4 (emphasis added). While it may have been better for Wolkoff to take such precipitous action, it can hardly be that he truly believed it would also be better for the artists.

In short, Wolkoff's rationales did not make any sense and were not credible. Clearly he was not doing the artists any favors. I had observed his demeanor on the witness stand and his persistent refusal to directly answer the questions posed to him by me and under cross-examination. I did not believe him.[10] Moreover, it simply stuck in my craw that I was misled that the demolition of the buildings was imminent when there was not even an application for a demolition permit extant. I was appalled at this conscious material misrepresentation.[11]

---

[10]"It is within the province of the district court as the trier of fact to decide whose testimony should be credited." *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 95 (2d Cir. 2012). "And as trier of fact, the judge is 'entitled, just as a jury would be, to believe some parts and disbelieve other parts of the testimony of any given witness.'" *Id.* (quoting *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011)) (citations omitted).

[11] I may have been overly charitable when I stated in my decision that "Wolkoff in the main testified truthfully." *Cohen II*, 2018 WL 851374, at *6. But

If Wolkoff truly cared about the artists he could easily have taken the position that their works of art could remain until the demolition would occur. And, once again, as I concluded in my post-trial decision: "The shame of it all is that since 5Pointz was a prominent tourist attraction the public would undoubtedly have thronged to say its goodbyes" which "would have been a wonderful tribute for the artists that they richly deserved." *Cohen II*, 2018 WL 851374, at *19.

**B**

As recognized in my decision, "[a] copyright holder seeking to prove that a copier's infringement was willful must show that the infringer 'had knowledge that its conduct represented infringement or . . . recklessly disregarded the possibility.'" *Cohen II*, 2018 WL 851374, at *16 (quoting *Bryant v. Media Right Prods.*, 603 F.3d 135, 143 (2d Cir. 2010)). Defendants conjure up an argument out of whole cloth that this means that willfulness cannot be found unless the defendant violated "clearly established law."[12] They draw this conclusion from a passing parenthetical reference

when it came to the critical parts of his testimony concerning his irrational reasons for whitewashing the plaintiffs' works of art, I took pains to explain why his precipitous conduct was "fanciful and unfounded" and a willful "act of pure pique and revenge." *Id.* at *17.

[12] Notably, defendants did not challenge the jury instruction on willfulness on this ground. *See* Def.'s Proposed Revisions and Objections to Court's Proposed Jury Charges, DE159, at 17. Nor did defendants challenge the jury's finding of willfulness in their post trial brief. *See* Def.'s Post-Trial Brief, DE 167. "It is well-settled that Rule 59 is not a vehicle for . . . presenting the case under new theories . . . ." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir.

to qualified immunity law in a "Cf." citation in a Fair Credit Reporting Act ("FCRA") case. Def.'s Br. at 26 & n.72 (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 (2007)). Defendants believe that qualified immunity should be extended to copyright law, arguing "the standard [for willfulness] is akin to the 'clearly established' test for qualified immunity under Section 1983." Reply Br. at 9.

Qualified immunity is a governmental immunity from suit. *See Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982) ("government officials are entitled to some form of immunity from suits for damages"). It has never been extended to private citizens not acting on behalf of the government, and this Court will not be the first to do so. *See Wyatt v. Cole*, 504 U.S. 158, 168 (1992) ("In short, the nexus between private parties and the historic purposes of qualified immunity is simply too attenuated to justify such an extension of our doctrine of immunity."). In any event, *Safeco* had nothing to do with qualified immunity. Rather, it simply addressed whether defendants could be held willfully liable for sending improper credit report notices to consumers in violation of the FCRA. *Safeco*, 551 U.S. at 52. Tellingly, the Supreme Court rejected the defendants' contention that liability "for 'willfully fail[ing] to comply' with FCRA goes only to acts known to violate the Act," *id.* at 56-

2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). Nonetheless, since the circuit court has "'discretion' to consider an 'issue[] not timely raised below,'" *id.* at 53 (quoting *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 159 (2d Cir. 2003)), I will address defendants' new legal arguments.

57, explaining that "[w]e have said before that 'willfully' is a 'word of many meanings whose construction is often dependent on the context in which it appears,'" *id.* at 57 (quoting *Bryan v. United States*, 524 U.S. 184, 191 (1998)). The Court cited a number of cases exemplifying this broad-based proposition, including *United States v. Ill. Cent. R. Co.*, 303 U.S. 239, 242-43 (1938), which held that "willfully," as used in a civil penalty provision, includes "conduct marked by careless disregard whether or not one has the right so to act." 303 U.S. at 242-43 (quoting *United States v. Murdock*, 290 U.S. 389, 395 (1933)).

This fits Wolkoff's conduct to a tee. As explained in my decision, "Wolkoff knew from the moment the lawsuit was initiated that the artists were pressing their VARA claims." *Cohen*, 2018 WL 851374, at *16. His conduct was the epitome of recklessness, let alone "careless disregard" for the plaintiffs' rights.

Moreover, the Second Circuit has consistently held that willfulness in cases governed by the Copyright Act can be found without an affirmative showing of knowledge of infringement, but can be "inferred" from the defendant's conduct. *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 264 (2d Cir. 2005); *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1010 (2d Cir. 1995); *N.A.S. Imp. Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252 (2d Cir. 1992). Allowing courts to infer willfulness is inconsistent with a notion that the plaintiff must prove the defendant violated clearly established law.

Further Second Circuit precedent is also anathema to defendants' "clearly established" postulation. *See Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999) (defendant acted willfully despite attempting to create product with "sufficient changes so that the redesigner does not get sued for copyright infringement"); *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1382 (2d Cir. 1993) (defendant acted willfully despite attempted fair use defense); *N.A.S. Import. Corp.*, 968 F.2d at 253 (defendant acted willfully because it could not argue that "it 'reasonably and in good faith' believed that its conduct did not constitute" at least "reckless disregard of [plaintiff's] rights")).

*International Korwin Corp. v. Kowalczyk*, 855 F.2d 375 (7th Cir. 1988), is also instructive. There, the district court found willfulness based on the defendant's "cavalier attitude" towards plaintiffs' rights. *Kowalczyk*, 855 F.2d at 380. The lower court held that while the defendant's "initial refusal may have come from ignorance of the intricacies of copyright law . . . [he] certainly came to understand his obligations under the law. Yet his answer, time and time again, was essentially—'Sue me . . . .'" *Id.* The circuit court affirmed, holding that the district court "follow[ed] the approach of other district courts that have considered such evidence as relevant on the issue of willfulness." *Id.* at 381. It also noted that the district court's determination that the defendant "was not a credible witness as to the testimony that he at least attempted to give from the witness stand," *id.*, was "especially important with respect

to his contention," *id.* that he had a "good faith belief" in his legal defense to the action. *Id.* at 382. So it is here.

## C

In the final analysis, in addition to Wolkoff's other reckless behavior, knowingly misleading the Court on a material issue simply cannot be condoned. *See United States v. Herrera-Rivera*, 832 F.3d 1166, 1177 (9th Cir. 2016) (characterizing "attempt to mislead the court" as "willful"); *United States v. Parker*, 594 F.3d 1243, 1251 (10th Cir. 2010) (false statements made with "willful intent to mislead the court"); *Milbourne v. Hastings*, 2017 WL 6402635, at *2 n.2 (D.N.J. Dec. 15, 2017) ("Willful attempts to mislead the Court will not be tolerated"); *Consumer Fin. Prot. Bureau v. Morgan Drexen, Inc.*, 2016 WL 6601650, at *2 (C.D. Cal. Mar. 16, 2016) (defendant's "willful attempts to mislead the Court are well-documented"); *Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 168 (S.D.N.Y. 1999) ("[a]ctive effort to mislead the court about continued willful counterfeiting is a traditional aggravating factor in statutory damages inquiries").

Defendants' "willful [behavior ] . . . [and] deliberate efforts to mislead the court . . . squandered their opportunities to convince the court that they should be held liable to plaintiff for anything less than the total amount of damages sought by plaintiff." *State Farm Mut. Auto. Ins. Co. v. Grafman*, 968 F. Supp. 2d 480, 484 (E.D.N.Y. 2013). Therefore, the Court sees no reason to disturb its finding that

Wolkoff acted willfully in destroying the artwork and that the full complement of permissible statutory damages was warranted.

## Recognized Stature

### A

As I explained in my prior decisions, the *Carter* two-tiered test has been accepted as the appropriate standard for determining "recognized stature." *Cohen II*, 2018 WL 851374, at \*11 (citing *Carter v. Helmsley-Spear, Inc.*, 861 F. Supp. 303, 325 (S.D.N.Y. 1994) ("*Carter I*"). Thus, once again, the visual art must be viewed as "meritorious" and its stature must be recognized "by art experts, other members of the artistic community, or by some cross-section of society." *Carter I*, 861 F. Supp. at 325. These three categories are conjugated with "or"; that is, the artist's work needs recognition by only one of these three groups. Nonetheless, as detailed in the Appendix, each of the 45 works of art meet all three standards.

Notably, as the Seventh Circuit recognized in *Martin*, the *Carter* test "may be more rigorous than Congress intended." *Martin v. City of Indianapolis*, 192 F.3d 608, 612 (7th Cir. 1999). This is perhaps so because VARA's underlying rationale is to be solicitous of the works of the visual artists who "work in a variety of media, and use any number of materials in creating their works." *Carter v. Helmsley-Spear, Inc.*, 71 F.3d 77, 83 (2d Cir. 1995) ("*Carter II*"). Therefore, once again, the courts "should use common sense," *Carter I*, 861 F. Supp. at 316, and not rigid views as to whether

a particular work is worthy of protection as a work of visual art. Indeed, VARA was not intended to denigrate plaintiffs' profound works but was more likely designed to "bar[] nuisance law suits, such as [a law suit over] the destruction of a five-year-old's fingerpainting by her class mate." *Id.* at 325 (quoting Edward J. Damich, *The Visual Artists Rights Act of 1990: Toward a Federal System of Moral Rights Protection For Visual Art*, 39 Cath. U.L. Rev. 945, 954 (1990)).

Defendants' challenges to the plaintiffs' works of art should be viewed through this prism.

## B

Principally, the defendants are dismissive of Cohen's testimony and expertise, contending that it was "erroneous as a matter of law" for the Court to rely on his "allocation of wall space for works as proof of their recognized stature." Def.'s Br. at 10. I could not disagree more. As I wrote: "that Jonathan Cohen selected the handful of works from the thousands at 5Pointz for permanence and prominence on long-standing walls is powerful, and arguably singular, testament to their recognized stature." *Cohen II*, 2018 WL 851374, at *12. He was, after-all, Wolkoff's long-time hand-picked curator, and for good reason. He remains one of the most prominent aerosol artists in the world.

The following is a limited excerpt from his curriculum vitae: He has had over 500 press mentions, including attention from the *New York Times*, *Wall Street*

*Journal*, *Huffington Post*, the *Today Show*, and *ESPN*. Trial Tr. at 1640:25-1641:6.

He has produced art on commission for Fortune 500 companies, including Louis

Vuitton, Nikon, Nespresso, Fiat, and Facebook. Cohen Folio at 7. His work has been

featured in art museums and galleries, including the Parish Art Museum, Orlando Art

Museum, Rush Arts Gallery, Corridor Gallery, and Gold Coast Arts Center. *Id.* His

work was featured in the major motion picture *Now You See Me* and many music

videos, and he has been featured in documentaries about aerosol art, including the

HBO documentary "BANKSY Does NYC." *Id.* at 7, 10, 56. His work has achieved

academic recognition. *Id.* at 9; Tr. at 1643:24-1645:12.

Jonathan Cohen, to Wolkoff's delight, was perhaps principally responsible for

transforming his crime-infested neighborhood and dilapidated warehouse buildings

into what became recognized as arguably the world's premium and largest outdoor

museum of quality aerosol art, drawing hundreds or thousands of daily visitors from

all over the world. And he was as qualified to do this as any other museum curator.

No one would contend that a work of art selected by the curator of the Museum of

Modern Art, the Guggenheim, or the new Whitney Museum should not qualify as a

work of recognized stature. The same can be said of the curator of 5Pointz.[13] Jonathan

---

[13] Angelo Madrigale ("Madrigale") described 5Pointz as "ground zero" of
the aerosol art movement, Trial Tr. at 1203:11-12, and testified that it was "equal
to" the Lincoln Center and Apollo Theater in cultural significance, *id.* at 1203:17-
21. Madrigale is the vice president and director of contemporary art at the Doyle
New York art auction house on the Upper East Side of Manhattan, Tr. at 1195:4-6.

Cohen was uniquely qualified to recognize the stature of plaintiffs' works of art.

And the record reflects how careful and meticulous he was in his selections. He only chose to recognize eight of his own solo works out of his hundred-plus works remaining at the time of the whitewash. Trial Tr. at 1537:7. Admirably, "[he] treated the rules the same [for himself] as [he] would for other artists." Tr. at 1424:4-5.

Nor should Cohen's expertise be marginalized because he was one of the plaintiffs. His status as a party was only a factor for me to consider; it was not a bar to crediting his testimony. *See United States v. Norman*, 776 F.3d 67, 77 (2d Cir. 2015) ("It is the job of the factfinder in a judicial proceeding to evaluate and decide whether or not to credit, any given item of evidence. Whether, and to what extent, testimony that has been admitted is to be credited are questions squarely within the province of the factfinder. A jury is properly instructed that it is free to believe part and disbelieve part of a defendant's trial testimony."). Cohen had been the curator for over a decade before he joined in this litigation to save 5Pointz. And I found his credibility as a witness to be unimpeachable.

## C

Defendants make a litany of other categorical attacks on the recognized stature

---

He also taught the courses Understanding the Global Art Market and The Business of Art at Pennsylvania College of Art and Design. Tr. at 1194: 25-1195:3. He conducted "the first ever auction of street art in the United States." Tr. 1195:25-1196:1.

evidence. None are meritorious.

First, they argue that merit is an "impermissible factor." Def.'s Br. at 4. This ignores that merit is an explicit part of the *Carter* test, requiring plaintiffs to show that the artwork is "viewed as meritorious." *Carter I*, 861. F. Supp. at 325.

Second, defendants argue that a work must have "acquired *recognition* of its merit at the time of its destruction." Def.'s Br. at 5. VARA explicitly leaves this question open. *See Carter I*, 861 F. Supp. at 325 n.12 ("Vara does not delineate when a work must attain 'recognized stature' in order to be entitled to protection under this Section."); Christopher J. Robinson, *The "Recognized Stature" Standard in the Visual Artists Rights Act*, 68 Fordham L. Rev 1935, 1967 (2000) ("In a footnote, Judge Edelstein strongly implies that a work may obtain recognized stature after the VARA suit is filed and still fulfil (sic) the terms of the provision."). Regardless, the focus of my decision was the recognition the works achieved prior to the whitewash.

In the same vein, defendants argue that the opinion of the plaintiffs' expert, Renee Vara[14] ("Vara"), that the works have merit is irrelevant because it was rendered after the works' destruction. *See* Def.'s Br. at 5 ("[A] single person's 2017 opinion that a work has artistic merit is of no relevance to whether the work had recognized stature in 2013.") But as detailed in the Appendix, Vara testified both to the merit of the works and the recognition they had achieved *prior to their destruction*.

---

[14] Not to be confused with the statute VARA.

Defendants argue that "it would defeat the very purpose of the 'recognized stature' requirement" if the determination was not made in time to provide "a building owner . . . guidance about what works are required to be preserved." Def.'s Br. at 6. Defendants cite no law for this dubious proposition. Regardless, Wolkoff knew before he whitewashed the works of art that he was facing the prospect of being liable for significant monetary damages.[15]

Defendants further argue that the "public did not have access" to the inside works. Def.'s Br. at 8. However, Cohen conducted regular tours of the inside works, tours which were heavily sought after. For example, pop artist Usher actively sought and was given a tour of the inside of the building, as did Lois Stavksy[16] and Arabic calligraphy artist eL Seed. Tr. at 1393:2-14; 1435:15-19. Vara also identified "about 805 Bates documents, which were e-mails that were written to 5Pointz or Jonathan [Cohen], requests for visitors to come inside." Tr. at 1043:22-24. The e-mails represented visitors from "something like 70 different countries," including

_____

[15] *See, e.g.*, OTSC Tr. at 6 (explaining that plaintiffs "can go forward with this case" and they will have "all the time in the world" to establish monetary damages); HTr. at 44-45 (commenting that "we'll see" whether plaintiffs are "entitled to damages later on."). In any event, Wolkoff created his own hardship by taking the law into his own hands rather than to await the Court's preliminary injunction decision and the trial.

[16] Stavsky is a graffiti art writer based in New York. She runs *Street Art NYC* and created the 5Pointz exhibit for *Google Arts and Culture.* Tr. at 1387:15-1391:11. She also led tours of 5Pointz for students, journalists, and artists. Tr. 1392:1-1393:14.

"professors from colleges, high school teachers, kindergarten teachers, private schools, all of them requesting tours to walk throughout the outside and inside of the building in order to look at the work." Tr. at 1044:1-5. Vara compared the inside works to "an exhibition in a gallery in Chelsea or the Lower East Side," Tr. at 1044:8-9, and noted that there were "some very interesting e-mails that were sent to Jonathan talking about how valuable they found the experience. How their students learned so very much," Tr. at 1044:12-15. Therefore, defendants' contention that the inside works were not recognized, much less accessible, prior to their destruction is contradicted by the record.

Defendants next argue that for the works on high walls, they "remained on the walls not by choice, but by necessity," as a "function of how difficult it was to reach the spot." Def.'s Br. at 9. But height and merit were fundamentally intertwined at 5Pointz. Cohen chose those walls for longstanding, higher quality works by the best artists because they were higher and harder to access. The decision as to whether a specific work would be longstanding was a holistic one, made partly prior to approving an artist for a longstanding wall and continuously ratified by allowing the work to remain. Therefore, the height of a particular work reinforces its quality, rather than detracts from it.[17]

---

[17] Cohen also confirmed that these pieces were of "high standing" and "[fell] into a different category in terms of [his] decision as the curator" compared to other works at the site. Trial Tr. at 1508:8-19.

Finally, defendants argue that for some works, the Folios "contain little or no evidence of any recognition." Def.'s Br. at 11. But the Folios were only part of the evidence. They supplemented the three weeks of trial testimony provided by each of the 21 artists, as well as the testimony of Vara, Stavsky, and Madrigale. Vara's opinion was also based on documents not included in the Folios, upon which she also relied in making her determinations that each work achieved recognized stature, including online videos, documentary footage, social media coverage, letters from art professors around the country, letters and e-mails from visitors to 5Pointz, and course syllabi.[18] Defendants' narrow focus on the Folios misses the weight of the evidence.[19]

## D

Finally, defendants criticize the Court for not making its work-by-work

---

[18] Experts may properly rely on such facts and data even if they have not been admitted. *See* Federal Rule of Evidence 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.").

[19] Defendants' doomsday argument that this decision will operate as a deterrent to future building owners has no merit. It simply encourages future parties to negotiate VARA rights in advance, or, at minimum, abide by the scriptures of 17 U.S.C. § 113(d), as contemplated by Congress. In fact, the New York Times reported just two weeks ago that graffiti artists have been commissioned to "bring[] a 5Pointz vibe to Lower Manhattan" by installing works at the World Trade Center. Jane Margolies, *Think Graffiti, With Consent*, N.Y. Times, June 4, 2018, at C1. Clearly the decision has not operated as such a deterrent.

findings explicit. Normally, including a "recital" of exhaustive evidence and testimony is "unhelpful" in a Court's findings of fact. *Leonard v. Dorsey & Whitney LLP*, 553 F.3d 609, 613 (8th Cir. 2009) (quoting 9C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2579 at 330 (3d ed. 2008)). Nonetheless, since defendants make particularized challenges to the recognized stature of each work of art, the Appendix sets forth work-by-work the primary evidence supporting my recognized stature determinations.

Thus, although I believe that Cohen's selections of the 45 works of art satisfied VARA's "recognized stature" requirement, the Appendix details that even if Cohen had not selected them, there was sufficient evidence to independently come to those conclusions.

**CONCLUSION**

Accordingly, defendants' motions are denied in their entirety.[20]

---

[20] I have considered defendants' other arguments, including their arguments regarding application of the statutory damage factors and remittur, and likewise find them without merit. I note that I have discovered one additional fact supporting my finding under the statutory factors that Wolkoff and G&M Realty continue to profit from the destruction of 5Pointz: G&M Realty's attempt to secure a trademark in the brand name "5Pointz," of which the Court takes judicial notice. U.S. Trademark Application Serial No. 86210325 (filed Mar. 4, 2014). Wolkoff knew that this application had been made at the time of the trial. This is further evidence of his deceptiveness since he claimed to have "no knowledge" of efforts to brand his new luxury condos with the 5Pointz logo. Trial Tr. at 2061:8-11.

**SO ORDERED**

                                        /S/ Frederic  Block
                                        FREDERIC BLOCK
                                        Senior United States District Judge

Brooklyn, New York
June 13, 2018

# APPENDIX

This appendix describes the evidence supporting the Court's determination of recognized stature for each of the 45 works. It includes both documentary evidence submitted at trial and testimonial evidence provided by the parties, fact witnesses, and plaintiffs' expert Vara. It is organized by artist, beginning with an overview of the artist's credentials and career recognition, followed by a work-by-work listing of the most relevant supporting evidence of recognized stature. This evidence embraces three categories, as it was presented at trial and contemplated by *Carter*: recognition by (1) art experts; (2) other members of the artistic community; or (3) some cross-section of society. *Carter I*, 851 F. Supp. at 325.

In addition to the evidence listed below, Cohen's curation is evidence of recognized stature for all works. Some of the testimony at trial applied broadly to multiple works; this testimony is separately referenced for each work to which it applied.

**Jonathan Cohen aka "Meres One"**

Cohen's credentials were presented in the body of the opinion. *See* Opinion at 21-22.

## 1. *7 Angle Time Lapse*

Category One: *7 Angle Time Lapse* was the first of its kind and provided "worldwide recognition" to Cohen. Tr. at 1409:21-23. It was chosen for placement in

the loading dock, "the heart of 5Pointz," Tr. at 1412:22-24. It was visible from the 7 train. *Id.* It was intended to be a longstanding piece. It was recognized by Vara as both a meritorious work of art, Tr. at 1649:11-24, and a work of recognized stature,[21] Tr. at 1642:24-1646:13; 1654:17-22.

Category Two: Cohen's work received academic recognition. Tr. at 1643:24-1645:12. *7 Angle Time Lapse* was featured in *Google Arts and Culture*. Cohen Folio at 119. An art blogger who covered 5Pointz called it the best piece at the site. Cohen Folio at 128. Gregory Snyder ("Snyder"), a professor at Baruch College who wrote *Graffiti Lives*, called the artists in this suit "top artists at the heights of their career" and said Cohen's works at 5Pointz "reflect mastery of the form in addition to their obvious aesthetic characteristic." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky.[22] Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale[23] as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

---

[21] The Court notes there is a difference between the step one determination of merit and the step two determination of recognition. While the works arguably must be recognized prior to their destruction, nothing precludes an expert from analyzing the works' merit after the fact. Indeed, any VARA lawsuit where the expert is retained after the works' destruction will feature this dynamic. The explanation of what makes a certain work meritorious informs *why* the works achieved the recognition that they did.

[22] Stavsky's credentials are listed at page 25, footnote 16.

[23] Madrigale's credentials are listed at page 22, footnote 13.

Category Three: *7 Angle Time Lapse* was seen by hundreds or thousands of daily visitors to 5Pointz. It was seen by millions of commuters on the passing train. He was featured in 14 documentaries. Tr. at 1647:12-15. The jury found it achieved recognized stature. *See* Verdict Form at 7, DE 165.

### 2.    *Outdoor Wildstyle*

Category One: *Outdoor Wildstyle* was chosen for a wall visible from the 7 train, Long Island Railroad, and Metro North. Tr. at 1420:22-1421:5. It was intended to remain for at least a year. Tr. at 1422:3-10. It was recognized by Vara as both a meritorious work of art, Tr. at 1651:20-23, and a work of recognized stature, Tr. at 1642:24-1646:13; 1654:17-22.

Category Two: Cohen's work received academic recognition. Tr. at 1643:24-1645:12. Snyder called the artists in this suit "top artists at the heights of their career" and said Cohen's works at 5Pointz "reflect mastery of the form in addition to their obvious aesthetic characteristic." Tr. at 1060:8-18. *Outdoor Wildstyle* was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Outdoor Wildstyle* was seen by hundreds or thousands of daily visitors to 5Pointz. It was seen by millions of commuters on the passing train. He was

featured in 14 documentaries. Tr. at 1647:12-15.

### 3. *Clown with Bulbs*

Category One: *Clown with Bulbs* was chosen for a wall at the highly coveted

loading dock. Tr. at 1423:13-17. It was painted in 2012 or 2013 and intended to

remain until the summer of 2014. Tr. at 1424:12-15. It was recognized by Vara as

both a meritorious work of art, Tr. at 1651:24-1652:4, and a work of recognized

stature, Tr. at 1642:24-1646:13; 1654:17-22.

Category Two: Cohen's work received academic recognition. Tr. at 1643:24-

1645:12. *Clown with Bulbs* was featured in *Google Arts and Culture*. Cohen Folio at

120. Snyder called the artists in this suit "top artists at the heights of their career" and

said Cohen's works at 5Pointz "reflect mastery of the form in addition to their

obvious aesthetic characteristic." Tr. at 1060:8-18. It was attested to as a work of high

quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10,

5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the

Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Clown with Bulbs* was seen by hundreds or thousands of daily

visitors to 5Pointz. He was featured in 14 documentaries. Tr. at 1647:12-15. The jury

found it achieved recognized stature. *See* Verdict Form at 13, DE 165.

### 4. *Eleanor RIP*

Category One: *Eleanor RIP* was chosen for a high wall at the highly coveted

33

loading dock. Tr. at 1429:8-12. It was painted shortly after the loading dock collapse and intended to be a permanent piece. *Id.* Cohen described it as one of his "favorite" pieces. Tr. at 1430:2-5. It was recognized by Vara as both a meritorious work of art, Tr. at 1653:3-7, and a work of recognized stature, Tr. at 1642:24-1646:13; 1654:17-22.

Category Two: Cohen's work received academic recognition. Tr. at 1643:24-1645:12. Snyder called the artists in this suit "top artists at the heights of their career" and said Cohen's works at 5Pointz "reflect mastery of the form in addition to their obvious aesthetic characteristic." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Eleanor RIP* was seen by hundreds or thousands of daily visitors to 5Pointz. He was featured in 14 documentaries. Tr. at 1647:12-15.

### 5.    *Patience*

Category One: *Patience* was chosen for a "wall"[24] on Crane Street with

_____

[24] It was technically painted on a gate.

34

significant foot traffic. Tr. at 1431:4-9. It was painted in 2013. Tr. at 1431:11. It was recognized by Vara as both a meritorious work of art, Tr. at 1653:8-14, and a work of recognized stature, Tr. at 1642:24-1646:13; 1654:17-22.

Category Two: Cohen's work received academic recognition. Tr. at 1643:24-1645:12. Snyder called the artists in this suit "top artists at the heights of their career" and said Cohen's works at 5Pointz "reflect mastery of the form in addition to their obvious aesthetic characteristic." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Patience* was seen by hundreds or thousands of daily visitors to 5Pointz. He was featured in 14 documentaries. Tr. at 1647:12-15.

### 6. *Character*

Category One: *Character* was chosen for an inside wall. Tr. at 1435:4-5. It was painted in 2012 or 2013. Tr. at 1435:14. It was featured in the private tours given by Cohen. Tr. at 1435:15-19. It was recognized by Vara as both a meritorious work of art, Tr. at 1654:3-7, and a work of recognized stature, Tr. at 1642:24-1646:13; 1654:17-22.

Category Two: College professors, high school teachers, kindergarten teachers, and private schools all requested tours for their classes to see his interior works. Tr. at

1044:1-20. Cohen's work received academic recognition. Tr. at 1643:24-1645:12.

Snyder called the artists in this suit "top artists at the heights of their career" and said

Cohen's works at 5Pointz "reflect mastery of the form in addition to their obvious

aesthetic characteristic." Tr. at 1060:8-18. It was attested to as a work of high quality

by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz

collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo

Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Character* was seen in the private tours of the inside works.

He was featured in 14 documentaries. Tr. at 1647:12-15.

### 7. *Inside Wildstyle*

Category One: *Inside Wildstyle* was chosen for an inside wall. Tr. at 1436:6-8.

It was painted in 2011 or 2012 and had achieved longstanding status. Tr. at 1436:7. It

was recognized by Vara as both a meritorious work of art, Tr. at 1654:10-14, and a

work of recognized stature, Tr. at 1642:24-1646:13; 1654:17-22.

Category Two: College professors, high school teachers, kindergarten teachers,

and private schools all requested tours for their classes to see his interior works. Tr. at

1044:1-20. Cohen's work received academic recognition. Tr. at 1643:24-1645:12.

Snyder called the artists in this suit "top artists at the heights of their career" and said

Cohen's works at 5Pointz "reflect mastery of the form in addition to their obvious

aesthetic characteristic." Tr. at 1060:8-18. It was attested to as a work of high quality

by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Inside Wildstyle* was seen in the private tours of the inside works. He was featured in 14 documentaries. Tr. at 1647:12-15.

**Akiko Miyakami aka "Shiro"**

Akiko Miyakami is a well-recognized Japanese artist who has been featured in 170 exhibitions and dozens of additional projects, primarily in Japan and New York, but also in Germany, India, and China. Miyakami Folio at 6-14; Tr. at 1608:5-11. She has been featured and interviewed in many art magazines and media outlets, including *Complex*, *Street Art*, *Untapped Cities*, and *NPR*. Miyakami Folio at 15-31; Tr. at 1608:10-11. She has been recognized by academic Jessica Pabon as a "top four graffiti artist," Tr. at 1608:15-17.

*8.* *Manga Koi*

Category One: *Manga Koi* was chosen by Cohen for placement on highly coveted rooftop space. Tr. at 1287:21-22. It survived for several months before the whitewash. Tr. at 1289:2-3. It was prominently placed between murals of two other famous artists and visible from the train. Tr. at 1287:22-1288:3. It was recognized by Vara as both a meritorious work of art, Tr. at 1613:3-22, and a work of recognized stature, Tr. at 1614:12-1619:11. Cohen testified it was a piece of "high standing" and

confirmed it "[fell] into a different category in terms of [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

Category Two: Her work was described as "instantly recognizable" by Danny Simmons, a gallery owner and collector of graffiti art. Tr. at 1615:11-12. Snyder called the artists in this suit "top artists at the heights of their career" and said Miyakami's works at 5Pointz "reflect mastery of the form in addition to their obvious aesthetic characteristic." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: It was seen by hundreds or thousands of daily visitors to 5Pointz. It was seen by millions of commuters on the passing train. Miyakami has thousands of social media followers. Tr. at 1617:2-7. *Manga Koi* is included in photo collections on Flickr, Hide Miner, and Getty Images. Tr. at 1618:10-1619:10. The jury found it had achieved recognized stature. *See* Verdict Form at 39, DE 165.

**Carlos Game aka "See TF"**

Carlos Game is a prominent artist and United States Marine Corps veteran. Tr. at 780:20-21. He has done many exhibitions and commissions, including a portrait of Ivanka Trump that was displayed in Trump Tower and exhibitions at Sacred Gallery, Rue De L'Art, Gold Coast Art Center, and a 9/11 Memorial at the Railroad Museum

of Long Island. Tr. at 804:1-11; Game Folio at 2; 14-17; 20-21; 27-30. His work has been covered by *Into the Urban*, *In the Wit of an Eye*, *Artsy*, and *Street Art NYC*. Game Folio at 3-13; 24-26.

### 9. *Black and White 5Pointz Girl*

Category One: *Black and White 5Pointz Girl* was chosen by Cohen for placement on a highly coveted longstanding wall visible from the train. Tr. at 797:2-4. Game described it as his "calling card." Tr. at 798:2. It was painted in summer 2013 and survived until the whitewash. Tr. at 798:13-15. It was recognized by Vara as both a meritorious work of art, Tr. at 1055:7-16, and a work of recognized stature, Tr. at 1042:11-13. Cohen testified it was a piece of "high standing" and confirmed it "[fell] into a different category in terms of [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

Category Two: College professors, high school teachers, kindergarten teachers, and private schools all requested tours for their classes to see his interior works. Tr. at 1044:1-20. Joseph Austin ("Austin"), a professor at University of Wisconsin-Milwaukee, called his works at 5Pointz "world-class displays of extraordinary, global, multi-cultural barring [sic] that has defined urban art as a significant movement in art history." Tr. at 1059:9-1060:2. Snyder called the artists in this suit "top artists at the heights of their career" and said Game's works at 5Pointz specifically "reflect mastery of the form in addition to their obvious aesthetic

characteristic." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: It was seen by hundreds or thousands of daily visitors to 5Pointz. It was seen by millions on the passing train. Tr. at 797:2-4. Game has thousands of social media followers. Tr. at 1061:2-5. *Black and White 5Pointz Girl* received 82 likes on Instagram. Game Folio at 45. The jury found it had achieved recognized stature. *See* Verdict Form at 59, DE 165.

**10.** ***Denim Girl***

Category One: *Denim Girl* was chosen by Cohen for placement on a longstanding inside wall. Tr. at 788:1-9. It was painted in 2009 and survived until the whitewash. Tr. at 788:8-10. Game believed it and all his other inside works were "permanent" pieces. Tr. at 793:6-9. It was recognized by Vara as both a meritorious work of art, Tr. at 1046:20-1048:3, and a work of recognized stature, Tr. at 1042:11-13. Cohen testified it was a piece of "high standing" and confirmed it "[fell] into a different category in terms of [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

Category Two: College professors, high school teachers, kindergarten teachers, and private schools all requested tours for their classes to see his work, including his

interior works. Tr. at 1044:1-5. Austin called his works at 5Pointz "world-class displays of extraordinary, global, multi-cultural barring [sic] that has defined urban art as a significant movement in art history." Tr. at 1059:9-1060:2. Snyder called the artists in this suit "top artists at the heights of their career" and said Game's works at 5Pointz specifically "reflect mastery of the form in addition to their obvious aesthetic characteristic." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Denim Girl* was seen in the private tours of the inside works. Game has thousands of social media followers. Tr. at 1061:2-5. *Denim Girl* received 56 likes on Instagram. Game at 46.

## 11. *Geisha*

Category One: *Geisha* was "the first image that everybody and anybody that's going into 5Pointz, who are walking to the MoMa or going into the diner or getting off the train will see." Tr. at 781:9-12. It was chosen by Cohen for placement on a wall at the entrance. Tr. at 783:1-22. It survived for several months and was intended to last longer. Tr. at 783:8-17. It was visible from the train. Tr. at 783:23-25. It was recognized by Vara as both a meritorious work of art, Tr. at 1042:16-1043:13, and a work of recognized stature, Tr. at 1042:11-13. Cohen testified it was a piece of "high

standing" and confirmed it "[fell] into a different category in terms of [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

Category Two: College professors, high school teachers, kindergarten teachers, and private schools all requested tours for their classes to see his work, including his interior works. Tr. at 1044:1-5. Austin called his works at 5Pointz "world-class displays of extraordinary, global, multi-cultural barring [sic] that has defined urban art as a significant movement in art history." Tr. at 1059:9-1060:2. Snyder called the artists in this suit "top artists at the heights of their career" and said Game's works at 5Pointz "reflect mastery of the form in addition to their obvious aesthetic characteristic." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Geisha* was seen by hundreds or thousands of daily visitors to 5Pointz. Game has thousands of social media followers. Tr. at 1061:2-5.

### 12.    *Marilyn*

Category One: *Marilyn was* chosen by Cohen for placement on a longstanding inside wall. Tr. at 785:10-15. It was painted in 2009 and survived until the

whitewash.[25] Tr. at 785:23-25. It was recognized by Vara as both a meritorious work of art, Tr. at 1044:21-1046:2, and a work of recognized stature, Tr. at 1042:11-13. Cohen testified it was a piece of "high standing" and confirmed it "[fell] into a different category in terms of [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

Category Two: *Marilyn* was featured in *In the Wit of the Eye*, the website of Hans Van Rittern, a European arts and culture tourist guide that led Europeans on tours to New York, including 5Pointz. Folio at 35; Tr. at 1061:6-18; 1062:22-23. College professors, high school teachers, kindergarten teachers, and private schools all requested tours for their classes to see his work, including his interior works. Tr. at 1044:1-5. Austin called his works at 5Pointz "world-class displays of extraordinary, global, multi-cultural barring [sic] that has defined urban art as a significant movement in art history." Tr. at 1059:9-1060:2. Snyder called the artists in this suit "top artists at the heights of their career" and said Game's works at 5Pointz "reflect mastery of the form in addition to their obvious aesthetic characteristic." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19.

---

[25] Defendants take issue with this date in their brief, claiming that an Instagram post on October 7, 2013 implies the piece was not created until 2013. Game Folio at 44. However, this is only the date that the Instagram post was created; it says nothing about when the artwork itself was placed on the wall. Despite challenging other creation dates, defendants did not challenge Game's testimony as to the date of the piece on cross-examination.

It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Marilyn* was seen in the private tours of the inside works. Game has thousands of social media followers. Tr. at 1061:2-5. *Marilyn* received 88 likes on social media. Game Folio at 44. The jury found it had achieved recognized stature. *See* Verdict Form at 51, DE 165.

**13.   *Red***

Category One: *Red* was chosen by Cohen for placement on a longstanding inside wall. Tr. at 788:3-6. It was painted in 2009 and survived until the whitewash. Tr. at 788:8-10. It was recognized by Vara as both a meritorious work of art, Tr. at 1046:3-19, and a work of recognized stature, Tr. at 1042:11-13. Cohen testified it was a piece of "high standing" and confirmed it "[fell] into a different category in terms of [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

Category Two: College professors, high school teachers, kindergarten teachers, and private schools all requested tours for their classes to see his work, including his interior works. Tr. at 1044:1-5. Austin called his works at 5Pointz "world-class displays of extraordinary, global, multi-cultural barring [sic] that has defined urban art as a significant movement in art history." Tr. at 1059:9-1060:2. Snyder called the artists in this suit "top artists at the heights of their career" and said Game's works at

44

5Pointz "reflect mastery of the form in addition to their obvious aesthetic characteristic." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Red* was seen in the private tours of the inside works. Game has thousands of social media followers. Tr. at 1061:2-5.

**Christian Cortes**

Christian Cortes has been a prominent New York graffiti artist since the 1980s. He has been featured in *The Source*, *Rap Pages*, *Vibe*, *Videograf*, *Street Art NYC*, *Senses Lost*, Off Track Planet's *Travel Guide for the Young, Sexy, and Broke*, *Elnuevodia*, *Wapa.tv*, *Time Out New York*, and *Spray Ground*. Cortes Folio at 7; 10-27. He produced an art exhibit for the lobby of One Police Plaza, artwork and graphic packages for many prominent 90s artists, including Wu-Tang Clan and Jeru the Damaja. Cortes Folio at 8. He won the 2007 grand prize in the Heineken Mural Search contest at P.S.1 Contemporary Art Center. Folio at 9. He has painted at 5Pointz since its early days as Phun Phactory. Folio at 9; Tr. at 553:2-6.

### 14. *Skulls Cluster aka Up High 1*

Category One: *Skulls Cluster* was chosen by Cohen for placement on the

highest floor in the loading dock area. Tr. at 540:17-20. It was painted in 2009 and achieved longstanding status as one of the oldest works on the site, intended to survive "for the life of the building." Tr. at 542:7-15. It was recognized by Vara as both a meritorious work of art, Tr. at 748:12-750:12, and a work of recognized stature, Tr. at 771:15-776:8. Cohen testified it was a piece of "high standing" and confirmed it "[fell] into a different category in terms of [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

Category Two: His work at 5Pointz was described by Austin as "world class displays." Tr. at 745:12-14; 747:11-15. It was included in *Google Arts and Culture*. Tr. at 772:11-14. His Skulls works at 5Pointz have been featured in the *New York Times*, *Street Art NYC*, *Senses Lost*, and Off Track Planet's *Travel Guide for the Young, Sexy, and Broke*. Tr. at 772:17-774:21; Cortes Folio at 10-19. Snyder called the artists in this suit "top artists at the heights of their career." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Skulls Cluster* was seen by hundreds or thousands of daily visitors to 5Pointz. It was searchable on Google. Tr. at 775:20-776:2. Cortes has

thousands of social media followers. Tr. at 775:1-6. The jury found it had achieved

recognized stature. *See* Verdict Form at 41, DE 165.

### 15. *Up High Blue Skulls aka Up High 2*

Category One: *Up High Blue Skulls* was chosen by Cohen for placement on a

high longstanding wall at 5Pointz as part of an effort to "raise 5Pointz to another

level." Tr. at 543:19-544:15. It was painted in 2009 and achieved longstanding status

as one of the oldest works on the site. Tr. at 544:16-25. It was recognized by Vara as

both a meritorious work of art, Tr. at 750:16-752:15, and a work of recognized

stature, Tr. at 771:15-776:8. Cohen testified it was a piece of "high standing" and

confirmed it "[fell] into a different category in terms of [his] decision as the curator"

compared to other works at the site. Tr. at 1508:8-19.

Category Two: His work at 5Pointz was described by Austin as "world class

displays." Tr. at 745:12-14; 747:11-15. It was included in *Google Arts and Culture*.

Tr. at 772:11-14. His Skulls works at 5Pointz have been featured in the *New York

Times*, *Street Art NYC*, *Senses Lost*, and Off Track Planet's *Travel Guide for the

Young, Sexy, and Broke*. Tr. at 772:17-774:21; Cortes Folio at 10-19. Snyder called

the artists in this suit "top artists at the heights of their career." Tr. at 1060:8-18. It

was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of

the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal

to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Up High Blue Skulls* was seen by hundreds or thousands of daily visitors to 5Pointz. It was searchable on Google. Tr. at 775:20-776:2. Cortes has thousands of social media followers. Tr. at 775:1-6. The jury found it had achieved recognized stature. *See* Verdict Form at 45, DE 165.

### 16.   *Up High Orange Skulls aka Up High 3*

Category One: *Up High Orange Skulls* was chosen by Cohen for placement on a high longstanding wall visible from the 7 train at 5Pointz. Tr. at 546:18-547:17. Cortes describes it as "the height of my, so far, of my graffiti career . . . ." Tr. at 546:20-21. It was painted in 2009 and achieved longstanding status as one of the oldest works on the site. Tr. at 550:15-16. It was recognized by Vara as both a meritorious work of art, Tr. at 752:19-753:23, and a work of recognized stature, Tr. at 771:15-776:8. Cohen testified it was a piece of "high standing" and confirmed it "[fell] into a different category in terms of [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

Category Two: His work at 5Pointz was described by Austin as "world class displays." Tr. at 745:12-14; 747:11-15. It was included in *Google Arts and Culture*. Tr. at 772:11-14. His Skulls works at 5Pointz have been featured in the *New York*

*Times*, *Street Art NYC*, *Senses Lost*, and Off Track Planet's *Travel Guide for the Young, Sexy, and Broke*. Tr. at 772:17-774:21; Cortes Folio at 10-19. Snyder called the artists in this suit "top artists at the heights of their career." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Up High Orange Skulls* was seen by hundreds or thousands of daily visitors to 5Pointz. It was seen by millions on the passing 7 train. It was searchable on Google. Tr. at 775:20-776:2. Cortes has thousands of social media followers. Tr. at 775:1-6. *See* Verdict Form at 47, DE 165.


### 17. *Jackson Avenue Skulls aka Scraps*

Category One: *Jackson Avenue Skulls* was chosen by Cohen for placement on a wall at 5Pointz near the stairwell to reach the site's interior. Tr. at 551:1-551:11; 754:22-755:25. It was painted on an unknown date (prior to July 2013). Tr. at 551:22-552:5; Cortes Folio at 44. It was recognized by Vara as both a meritorious work of art, Tr. at 754:22-755:9, and a work of recognized stature, Tr. at 768:16-771:1. Cohen testified it was a piece of "high standing" and confirmed it "[fell] into a different

category in terms of [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

Category Two: His work at 5Pointz was described by Austin as "world class displays." Tr. at 745:12-14; 747:11-15. It was included in *Google Arts and Culture*. Cortes Folio at 43-44. Snyder called the artists in this suit "top artists at the heights of their career." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Jackson Avenue Skulls* was seen by hundreds or thousands of daily visitors to 5Pointz. Cortes has thousands of social media followers. Tr. at 775:1-6.

**Estaban Del Valle**

Estaban Del Valle is an award-winning artist who has produced dozens of exhibitions and murals. Del Valle Folio 4-6. He has attended some of the most prestigious art schools in the world as both a student and a resident. *Id.*; Tr. at 607:24-609:7. His work has been featured in the *New York Times* and *Brooklyn Street Art*. Folio at 7-10; 19-22. His work has sold at prestigious contemporary art auction houses. Folio at 23-24; Tr. at 631:1-7.

### 18.  *Beauty and the Beast*

Category One: *Beauty and the Beast* was chosen by Cohen for placement on a longstanding wall. Tr. at 117:3-8. It was up for more than a year. Tr. at 117:9-12. It was recognized by Vara as both a meritorious work of art, Tr. at 625:22-630:6, and a work of recognized stature, Tr. at 606:1-3. Cohen testified it was a piece of "high standing" and confirmed it "[fell] into a different category in terms of [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

Category Two: *Beauty and the Beast* was featured in *Arts Observer* magazine, the Queens Library digital archive, and *Google Arts and Culture*. Del Valle Folio at 27-32. Del Valle was commissioned to draw a copy of the work for the cover of the book *Dumb Animals* by Damien Colon. Tr. at 118:15-19. He was commissioned to paint a copy of the image to promote a festival in the Dominican Republic. Tr. at 118:10-14. Snyder called the artists in this suit "top artists at the heights of their career." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19.It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Beauty and the Beast* was seen by hundreds or thousands of daily visitors to 5Pointz. It was searchable on Google. Tr. at 633:5-10. He has

thousands of social media followers. Tr. at 632:10-16. One Instagram posting of the photo received over 33,000 likes. Tr. at 118:1-7. The jury found it had achieved recognized stature. *See* Verdict Form at 31, DE 165.

**Francisco Fernandez aka "DASIC"**

Francisco Fernandez is a prominent Chilean muralist. He has done murals all around the United States and South America, including New York, Miami, Detroit, Chicago, Texas, San Miguel, Chile, Santiago, Chile, Buzios, Brazil, Valparaiso, Chile, and cities in Argentina, Uruguay, and Peru. Fernandez Folio at 2-30. His work has been featured in the *New York Times*, *The Guardian*, *Americas Quarterly*, *Hi-Fructose*, *Street Art NYC*, the *Holland Sentinel*, the *Art Elephant* blog, *Complex*, and documentary films. Fernandez Folio at 4-26; Tr. at 1655:21-1657:1.

### 19. *Dream of Oil*

Category One: *Dream of Oil* was one of the largest pieces at 5Pointz. Tr. at 1572:19-22. It was chosen by Cohen for placement on highly coveted rooftop space visible from the train. Tr. at 1570:13; 1574:3-10. It was recognized by Vara as both a meritorious work of art, Tr. at 1655:9-19, and a work of recognized stature, Tr. at 1655:21-1657:5. Cohen testified it was a piece of "high standing" and confirmed it "[fell] into a different category in terms of [his] decision as the curator" compared to

other works at the site. Tr. at 1508:8-19.

Category Two: *Dream of Oil* was featured in The re:art, an online art publication. Fernandez Folio at 35-38. It was featured in online documentaries about 5Pointz. Tr. at 1656:16-18. It was recognized by Simmons. Tr. at 1656:16. It was published in The Guardian. Tr. at 1656:24. Snyder called the artists in this suit "top artists at the heights of their career." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Dream of Oil* was seen by hundreds or thousands of daily visitors to 5Pointz. It was seen by millions of commuters on the passing train. Fernandez has thousands of social media followers. Fernandez Folio at 32. *Dream of Oil* received hundreds of likes on his social media accounts. Fernandez Folio at 40-41. The jury found it had achieved recognized stature. *See* Verdict Form at 69, DE 165.

**James Cochran aka "Jimmy C"**

James Cochran is a prominent London aerosol artist credited with inventing the artform "aerosol pointillism." Cochran Folio at 8; Tr. at 690:14-15. His murals and exhibitions can be viewed all over the world, particularly the United Kingdom,

France, and Australia. Cochran Folio at 4-6. He has been featured in ten major videos

from major press outlets, and 78 articles by journals, newspapers, and art critics. Tr.

at 1033:1-12. He has been interviewed by *The Guardian*, *Street Art United States*,

and *Support Street Art* and profiled by the *New York Times* and *CNN*. Cochran Folio

at 7-12; 49-61.

### 20.	*Subway Rider*

Category One: *Subway Rider* was chosen by Cohen for placement on a

longstanding wall in 2011. Tr. at 696:13-24. It was recognized by Vara as both a

meritorious work of art, Tr. at 1024:4-1032:18, and a work of recognized stature, Tr.

at 1022:19-24. Cohen testified it was a piece of "high standing" and confirmed it

"[fell] into a different category in terms of [his] decision as the curator" compared to

other works at the site. Tr. at 1508:8-19.

Category Two: *Subway Rider* was featured *Street Art NYC*, *Google Arts and

Culture*, *Time Out New York*, *The Guardian*, *Global Street Art*, and *Bit Rebels*.

Cochran Folio at 71-87. Snyder called the artists in this suit "top artists at the heights

of their career." Tr. at 1060:8-18. It was attested to as a work of high quality by

Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz

collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo

Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Subway Rider* was seen by hundreds or thousands of daily visitors to 5Pointz. Cochran has tens of thousands of social media followers. Tr. at 1038:7-13; Cohran Folio at 62-66. *Subway Rider* received hundreds of likes on his social media accounts. Cohen Folio at 75-76. The jury found it had achieved recognized stature. *See* Verdict Form at 75, DE 165.

**James Rocco aka "Topaz"**

Rocco is a well-recognized muralist and aerosol artist. His works have been featured at the Graffiti Hall of Fame, the Ryan and Chelsea Clinton Community Health Center, and the Haven Arts Gallery. Rocco Folio at 3-15. He and his work have been covered by *Street Art NYC*. Rocco Folio at 4-5; 16-17. He is the founder and owner of multimedia company Skygod Studios. Rocco Folio at 17. He has created murals and graphic design for DJ Premier, Saiers Capital, CNBC, New York City Council, Tombstone Productions, Dark Castle Entertainment, Groupe Renault, Peugeot France, MTV, Pradaxa, Nestle, Toshiba, Ford Motor Company, Sony Music Entertainment, 50 Unit Films, MC Craig G, Jacob & Co., and McGraw Hill Publishing Co., among others. Rocco Folio at 18-19. He has also done graphics for hip hop artists 50 Cent, Marley Marl, Rahzel, DJ JS-1, and DJ Ody Roc. Rocco Folio at 22.

*21.    Bull Face*

Category One: *Bull Face* was chosen by Cohen for placement on a longstanding, highly trafficked wall at the loading dock. Tr. at 992:18-23. It was created in 2009 and survived until the whitewash. Tr. at 994:24-25. It was visible from the 7 train. Tr. at 992:18-23. It was intended to be up "indefinitely." Tr. at 995:3-4. It was recognized by Vara as both a meritorious work of art, Tr. at 1096:14-1097:4, and a work of recognized stature, Tr. at 1098:14-1101:12. Cohen testified it was a piece of "high standing" and confirmed it "[fell] into a different category in terms of [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

Category Two: Snyder called the artists in this suit "top artists at the heights of their career." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Bull Face* was seen by hundreds or thousands of daily visitors to 5Pointz. Rocco has over one thousand social media followers. Tr. at 1100:24-1101:6.

**22.  *Lord Paz***

Category One: *Lord Paz* was chosen by Cohen for placement on a high,

longstanding column with "heavy" foot traffic on Crane Street. Tr. at 996:22-997:3; 998:14-18. It was created in 2009 and survived until the whitewash. Tr. at 997:22-23. It was intended to be up "permanently." Tr. at 998:3-4. It was recognized by Vara as both a meritorious work of art, Tr. at 1097:6-1098:4, and a work of recognized stature, Tr. at 1098:14-1101:12. Cohen testified it was a piece of "high standing" and confirmed it "[fell] into a different category in terms of [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

Category Two: Snyder called the artists in this suit "top artists at the heights of their career." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Lord Paz* was seen by hundreds or thousands of daily visitors to 5Pointz. Rocco has over one thousand social media followers. Tr. at 1100:24-1101:6.

### 23. *Face on Jackson*

Category One: *Face on Jackson* was chosen by Cohen for placement on a longstanding high column above Jackson Avenue, "the highest traffic street of 5Pointz." Tr. at 998:25-999:4; 999:15-16. It was created in 2009 and survived until

the whitewash. Tr. at 1000:6-7. It was intended to be up "permanently." Tr. at 1000:8-13. It was given space next to Lady Pink, an "important position" that "is a significant recognition of his qualities and characteristics" according to Vara. Tr. at 999:1-2; 1098:24-1099:2. It was recognized by Vara as both a meritorious work of art, Tr. at 1098:5-1099:2, and a work of recognized stature, Tr. at 1098:14-1101:12. Cohen testified it was a piece of "high standing" and confirmed it "[fell] into a different category in terms of [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

Category Two: Snyder called the artists in this suit "top artists at the heights of their career." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Face on Jackson* was seen by hundreds or thousands of daily visitors to 5Pointz. Rocco has over one thousand social media followers. Tr. at 1100:24-1101:6.

**Kenji Takabayashi aka "Python"**

Kenji Takabayashi is an accomplished artist and professional visual designer. In addition to his success as a muralist, he was a senior visual designer for Major

League Baseball for twelve years. Takabayashi Folio at 5. Takabayashi has been commissioned for several murals around New York City and is registered with the Brooklyn Arts Council's Artist Registry. Takabayashi Folio at 9-19. He created art for the redesign of the Apollo Theater. Tr. at 304:14-16; 305:6-9. He has been featured on *Good Morning America*. Tr. at 304:23-25. He has been commissioned to do graffiti-inspired artwork by many Fortune 500 companies and advertising firms, including Pepsi, Samsung, Sony, Google, and Ogilvy. Tr. at 307:6-11.

### 24. *Starry Night*

Category One: *Starry Night* was chosen by Cohen for placement on a wall on highly trafficked Crane Street. Tr. at300:8-15. It was visible from the passing 7 train. Tr. at 300:16-19. It was recognized by Vara as both a meritorious work of art, Tr. at 658:21-660:17, and a work of recognized stature, Tr. at 662:2-668:19. Cohen testified it was a piece of "high standing" and confirmed it "[fell] into a different category in terms of [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

Category Two: *Starry Night* was featured in a post by prominent graffiti writer and curator Olivia Strauss in the *New York City Street Art Blog*. Tr. at 662:9-18. It was featured in *The Guardian*. Tr. at 663:9-25; Takabayashi Folio at 26-27. It was included in a course syllabus by a professor at Baruch college. Tr. at 664:6-19;

1 Takabayashi Folio at 28-29. Snyder called the artists in this suit "top artists at the

2 heights of their career." Tr. at 1060:8-18. It was attested to as a work of high quality

3 by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz

4 collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo

5 Theater in cultural significance in New York, Tr. at 1203:20-21.

6       Category Three: *Starry Night* was seen by hundreds or thousands of daily

7 visitors to 5Pointz. It was seen by millions of commuters on the passing train. It was

8 searchable on Google. Tr. at 665:12-19. Takabayashi has thousands of social media

9 followers. Tr. at 666:15-667:3. *Starry Night* was included on a third party's *Flickr*

10 page. Tr. at 668:5-17. The jury found it had achieved recognized stature. *See* Verdict

11 Form at 83, DE 165.

12 **Luis Gomez aka "Ishmael"**

13       Luis Gomez is a prominent artist who works in aerosol, murals, sculptures, and

14 canvas. Tr. at 893:14-17. He and his work have been featured in *The New York Times*,

15 *The Post and Courier*, *Charleston City Paper*, *Mountain Xpress*, *Citizen-Times*, *The*

16 *Old Wood Company*, *Street Art Walk*, *Brooklyn Street Art*, *Street Art NYC*, *Street Art*

17 *News*, *Global Street Art*, *Court McCracken*, ilovedetroitmichigan.com, and *Lily*

18 *Knights*, as well as the websites of Charleston and Spartanburg, South Carolina.

19 Gomez Folio at 3-50; Tr. at 893:22-903:7. He has painted works for five major

1    motion pictures. Tr. at 904:19-21.

2    **25.   *Inside King Kong***

3         Category One: *Inside King Kong* was chosen by Cohen for placement on an

4    inside wall in April 2013. Tr. at 887:6-8; 889:19-20. It was recognized by Vara as

5    both a meritorious work of art, Tr. at 1076:7-1077:17, and a work of recognized

6    stature, Tr. at 1077:15-1081:1. Cohen testified it was a piece of "high standing" and

7    confirmed it "[fell] into a different category in terms of [his] decision as the curator"

8    compared to other works at the site. Tr. at 1508:8-19.

9         Category Two: Based on *Inside King Kong*, Gomez was invited to create a

10   similar mural by the curator of the Bushwick Collective, another prominent aerosol

11   art collection. Tr. at 1077:24-1078:6. College professors, high school teachers,

12   kindergarten teachers, and private schools all requested tours for their classes to see

13   his interior works. Tr. at 1044:1-20. Snyder called the artists in this suit "top artists at

14   the heights of their career." Tr. at 1060:8-18. It was attested to as a work of high

15   quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10,

16   5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the

17   Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

18        Category Three: Gomez has thousands of social media followers. Tr. at 1079:4-

19   6. *Inside King Kong* had hundreds of likes on Instagram. Gomez Folio at 65. The jury

found it had achieved recognized stature. *See* Verdict Form at 77, DE 165.

**Luis Lamboy aka "Zimad"**

Luis Lamboy is a prominent aerosol artist who worked as a general foreman and art handler for Sotheby's Auction House for 18 years and has also designed clothing for musicians. Tr. at 854:1-5. He has done gallery shows since 1984. Tr. at 854:6. His work has been exhibited across the United States and Europe, and he works with major brands, including Nike, MTV, Modello, Corona, Red Bull, Lionsgate Films, Jacob & Co., and State Farm. Lamboy Folio at 5-7. He and his work have been featured in *Art & Fashion Magazine*, *The Courier Journal*, *Graphotism*, *Hall of Fame New York City*, *Diva International*, *Name Tagging*, *Boombox Magazine*, *Street Art NYC*, and on *Project Runway*. Lamboy Folio at 11-24; 27-40; 46-51. He has a permanent installation at the United Nations in Geneva. Lamboy Folio at 42.

### 26.   *Blue Jay Wall*

Category One: *Blue Jay Wall* was chosen by Cohen for placement on a longstanding wall at the loading dock. Tr. at 841:5-17. It was visible from the 7 train. Tr. at 841:17-20. It was recognized by Vara as both a meritorious work of art, Tr. at 1068:21-1069:17, and a work of recognized stature, Tr. at 1074:6-1075:20. Cohen testified it was a piece of "high standing" and confirmed it "[fell] into a different

category in terms of [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

Category Two: *Blue Jay Wall* was featured in *Google Arts and Culture* and a *Street Art NYC* interview. Tr. at 1074:6-1075:2; Lamboy Folio at 57-58. Snyder called the artists in this suit "top artists at the heights of their career." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Blue Jay Wall* was seen was seen in the private tours of the inside works. Lamboy has thousands of social media followers. Tr. at 1075:15-17. It was searchable on Google. Tr. at 1075:11-14. The jury found it had achieved recognized stature. *See* Verdict Form at 21, DE 165.

### 27. *Electric Fish*

Category One: *Electric Fish* was chosen by Cohen for placement on a longstanding inside wall. Tr. at 850:1; 17-24. It was recognized by Vara as both a meritorious work of art, Tr. at 1072:2-14, and a work of recognized stature, Tr. at 1074:6-1075:20. Cohen testified it was a piece of "high standing" and confirmed it "[fell] into a different category in terms of [his] decision as the curator" compared to

other works at the site. Tr. at 1508:8-19.

Category Two: College professors, high school teachers, kindergarten teachers, and private schools all requested tours for their classes to see his interior works. Tr. at 1044:1-20. Snyder called the artists in this suit "top artists at the heights of their career." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Electric Fish* was seen was seen in the private tours of the inside works. Lamboy has thousands of social media followers. Tr. at 1075:15-17. It was searchable on Google. Tr. at 1075:11-14.


### 28.    *Inside 4th Floor*

Category One: *Inside 4th Floor* was chosen by Cohen for placement on a longstanding inside wall between 2010 and 2012. Tr. at 843:21-22; 844:8-9. It was recognized by Vara as both a meritorious work of art, Tr. at 1069:22-1070:17, and a work of recognized stature, Tr. at 1074:6-1075:20. Cohen testified it was a piece of "high standing" and confirmed it "[fell] into a different category in terms of [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

Category Two: College professors, high school teachers, kindergarten teachers, and private schools all requested tours for their classes to see his interior works. Tr. at 1044:1-20. Snyder called the artists in this suit "top artists at the heights of their career." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Inside 4th Floor* was seen in the private tours of the inside works. Lamboy has thousands of social media followers. Tr. at 1075:15-17. It was searchable on Google. Tr. at 1075:11-14.

### 29.    *Clothing Brand aka Monopoly Man*

Category One: *Clothing Brand aka Monopoly Man* was chosen by Cohen for placement on a longstanding inside wall between 2010 and 2012. Tr. at 847:10-13. It was recognized by Vara as both a meritorious work of art, Tr. at 1071:6-1072:1,and a work of recognized stature, Tr. at 1074:6-1075:20. Cohen testified it was a piece of "high standing" and confirmed it "[fell] into a different category in terms of [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

Category Two: College professors, high school teachers, kindergarten teachers, and private schools all requested tours for their classes to see his interior works. Tr. at 1044:1-20. Snyder called the artists in this suit "top artists at the heights of their career." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Clothing Brand aka Monopoly Man* was seen was seen in the private tours of the inside works. Lamboy has thousands of social media followers. Tr. at 1075:15-17. It was searchable on Google. Tr. at 1075:11-14.




*30.*   *World Traveler*

Category One: *World Traveler* was chosen by Cohen for placement on a longstanding inside wall between 2010 and 2012. Tr. at 845:25-846:1. It was recognized by Vara as both a meritorious work of art, Tr. at 1070:20-1071:5, and a work of recognized stature, Tr. at 1074:6-1075:20. Cohen testified it was a piece of "high standing" and confirmed it "[fell] into a different category in terms of [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

Category Two: College professors, high school teachers, kindergarten teachers, and private schools all requested tours for their classes to see his interior works. Tr. at 1044:1-20. Snyder called the artists in this suit "top artists at the heights of their career." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *World Traveler* was seen was seen in the private tours of the inside works. Lamboy has thousands of social media followers. Tr. at 1075:15-17. It was searchable on Google. Tr. at 1075:11-14.

**Nicholai Khan aka "Twin" aka "Think"**

Khan is a New York artist whose work has been featured in the Chelsea Art Gallery, the Bronx Museum of the Arts, Art Galleries Europe, Paris, and the Agora Gallery, among others. Khan Folio at 4-7; 17-18. He has been commissioned to do portraits for Martha Stewart and Andrew Cuomo. Khan Folio at 10-11; Tr. at 1168:22-1169:3. He and his work have been featured in the *Times Ledger* and *Art Dish*. Khan Folio at 7-8; 14-16.

### 31.    *Dos Equis Man*

Category One: *Dos Equis Man* was chosen by Cohen for placement on a longstanding wall. Tr. at 1162:10-1163:1. It was recognized by Vara as both a meritorious work of art, Tr. at 1622:23-1623:14, and a work of recognized stature, Tr. at 1622:2-22; 1623:15-1624:24. Cohen testified it was a piece of "high standing" and confirmed it "[fell] into a different category in terms of [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

Category Two: *Dos Equis Man* was featured in a Russian newspaper. Khan Folio at 28-29. It was featured in 5Pointz documentaries *We Don't Need Rats, 5Pointz Long Island City*, and *Urban Explorer: Exploring 5Pointz.* Tr. at 1623:15-1624:3; 1624:18-24. Snyder called the artists in this suit "top artists at the heights of their career." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Dos Equis Man* was seen by hundreds or thousands of daily visitors at 5Pointz. Khan has nineteen thousand social media followers. Tr. at 1622:5-7. *Dos Equis Man* received hundreds of likes on social media. Khan Folio at 32-33. The subject of the painting, Jonathan Goldsmith, recognized it publically. Tr. at

68

1622:9-22; Khan Folio at 35-37. It was found to be a work of recognized stature by the jury. *See* Verdict Form at 71, DE 165.

### 32.   *Orange Clockwork*

Category One: *Orange Clockwork* was chosen by Cohen for placement on a longstanding wall. Tr. at 1165:25-1166:2. It was recognized by Vara as both a meritorious work of art, Tr. at 1619:16-1622:1, and a work of recognized stature, Tr. at 1623:15-1624:24. Cohen testified it was a piece of "high standing" and confirmed it "[fell] into a different category in terms of [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

Category Two: *Orange Clockwork* was featured in 5Pointz documentaries *We Don't Need Rats, 5Pointz Long Island City*, and *Urban Explorer: Exploring 5Pointz.* Tr. at 1623:15-1624:3; 1624:18-24. Snyder called the artists in this suit "top artists at the heights of their career." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Orange Clockwork* was seen by hundreds or thousands of daily visitors at 5Pointz. Khan has nineteen thousand social media followers. Tr. at 1622:5-7. *Orange Clockwork* received over one hundred likes on social media. Khan

Folio at 34. It was found to be a work of recognized stature by the jury. *See* Verdict
Form at 73, DE 165.

**Richard Miller aka "Patch Whiskey"**

Richard Miller is a prolific West Virginian street artist who had exhibitions at
The Bushwick Collective, Art Basel Miami, Low Brow Artique, and the Butcher
Gallery. Miller Folio 12-20. He has also done installations and murals for numerous
restaurants and brand, including Nella Mushrooms, Pabst Blue Ribbon, and Absolute
Vodka. Tr. at 927:2-8. His work was featured in Hollywood film *Rock of Ages*. Tr. at
927:11-14. His work has been featured in *Street Anarchy*, *Street Art NYC*,
*DoSavannah*, and *Vandalog*. Miller Folio at 14-25.

### 33. *Monster I*

Category One: *Monster I* was chosen by Cohen for placement on a
longstanding inside wall at 5Pointz. Tr. at 918:23-919:3. It was recognized by Vara as
both a meritorious work of art, Tr. at 1083:22-1085:20, and a work of recognized
stature, Tr. at 1086:17-1090:12. Cohen testified it was a piece of "high standing" and
confirmed it "[fell] into a different category in terms of [his] decision as the curator"
compared to other works at the site. Tr. at 1508:8-19.

Category Two: College professors, high school teachers, kindergarten teachers, and private schools all requested tours for their classes to see his interior works. Tr. at 1044:1-20. Snyder called the artists in this suit "top artists at the heights of their career." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Monster I* was seen on the tours of the inside works. Miller has more than ten thousand social media followers. Tr. at 929:2-4. The jury found it achieved recognized stature. *See* Verdict Form at 79, DE 165.




### 34. *Monster II*

Category One: *Monster II* was chosen by Jonathan Cohen for placement on a rooftop structure visible from the train. Tr. at 922:6-22; 924:13-14. It was recognized by Vara as both a meritorious work of art, Tr. at 1085:21-1086:16, and a work of recognized stature, Tr. at 1086:17-1090:12. Cohen testified it was a piece of "high standing" and confirmed it "[fell] into a different category in terms of [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

Category Two: It was photographed by Martha Cooper, "one of the most important photographers and historians of the graffiti art movement." Tr. at 1087:3-9. It was featured in HBO documentary *Banksy Does New York*. Tr. at 1087:14-22. Snyder called the artists in this suit "top artists at the heights of their career." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Monster II* was seen by hundreds or thousands of daily visitors to 5Pointz. It was seen by millions on the passing 7 train. Tr. at 924:13-14. Multiple online videos from third parties feature *Monster II*. Miller Folio at 37-40. Miller has more than ten thousand social media followers. Tr. at 929:2-8. *Monster II* had over one hundred likes on social media before it was destroyed. Tr. at 1089:7-13. It had over one thousand social media likes after its destruction. Miller Folio at 41-45. The jury found it had achieved recognized stature. *See* Verdict Form at 81, DE 165.

**Rodrigo Henter de Rezende aka "AK47"**

Rodrigo Henter de Rezende is a prominent Brazilian artist who moved to New York for six months to paint at 5Pointz and join the New York hip hop and graffiti culture. Tr. at 1120:13-21; 1126:19-1127:8. He has had exhibitions in many galleries

and worked with clients including Smirnoff Vodka, Compactor Makers, UNI POSCA, Suvinil, Worx, and Colorgin. De Rezende Folio at 5. He has been featured in *O Globo Rio* and *Street Art NYC*. De Rezende Folio at 9; 29. He has painted at the *Graffiti Hall of Fame* in East Harlem. De Rezende Folio at 29.

### 35.  *Fighting Tree*

Category One: *Fighting Tree* was chosen by Cohen for placement on a high, longstanding wall near the loading dock. Tr. at 1125:21-1126:9. It was intended to be a longstanding piece. *Id.* It was recognized by Vara as both a meritorious work of art, Tr. at 1634:16-1637:5, and a work of recognized stature, Tr. at 1638:5-1639:19. Cohen testified it was a piece of "high standing" and confirmed it "[fell] into a different category in terms of [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

Category Two: *Fighting Tree* was featured in a Russian newspaper article and the Stephen Wise Photography collection. De Rezende Folio at 39-42. It was featured in a *Village Voice* article. Tr. 1638:10-11. It was featured in Brandon Rembler's photography collection. Tr. at 1638:13-16. It was featured in the videos *The Graffiti Mecca 5Pointz* and *5Pointz Long Island City*. Tr. at 1639:1-6. Snyder called the artists in this suit "top artists at the heights of their career." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the

"curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: It was seen by hundreds or thousands of daily visitors to 5Pointz. De Rezende has thousands of social media followers. Tr. at 1639:4-9. *Fighting Tree* has received over 100 likes on social media. Tr. at 1639:14-17. It was featured on a third party's Flickr. Tr. at 1638:25; De Rezende Folio at 45. The jury found it had achieved recognized stature. *See* Verdict Form at 33, DE 165.

**Sandra Fabara aka "Lady Pink"**

Sandra Fabara is "considered an icon, legendary, historic." Tr. at 1596:18. She "is credited, both of [sic] in art history and a [sic] hip-hop culture, as one of the originators of the language, meaning the style that you understand, the different forms of graffiti art . . . ." Tr. at 1596:19-22. She has had more than 120 exhibitions, more than 85 commercial installations, and has been featured in multiple films about graffiti art. Tr. at 1596:25-1597:6. She has given more than 30 lectures on art. Tr. at 1597:6-9. She has been featured in the *New York Times*, *Time Out New York*, and the *Observer*, among others. Fabara Folio at 4-5; 8-9; 12-14; 30-31; 35-37. She has been exhibited in the Museum of the City of New York, the New Museum of Contemporary Art, New York, the Queens Museum, the Woodward Gallery, the

1     Brooklyn Museum, and the El Museo del Barrio. Fabara Folio at 10-11; 15-23; 26-

2     29; 35-40.

3     **36.    *Green Mother Earth***

4     Category One: *Green Mother Earth* was chosen by Cohen for a high wall on

5     Jackson Avenue visible from the train. Tr. at 1238:21-24. It was one of two works

6     that were intentionally saved in 2009 after the stairwell collapse. Tr. at 1532:2-15. It

7     was recognized by Vara as both a meritorious work of art, Tr. at 1597:21-1600:10,

8     and a work of recognized stature, Tr. at 1600:11-1605:24. Cohen testified it was a

9     piece of "high standing" and confirmed it "[fell] into a different category in terms of

10    [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

11    Category Two: *Green Mother Earth* was featured in several travel bloggers'

12    pieces on 5Pointz. Tr. at 1627:9-20; 1629:11-19. Snyder opined that, "The

13    destruction of the graffiti of Lady Pink would warrant a significant lawsuit. Lady

14    Pink is without question one of the most accomplished graffiti artists," and

15    specifically referenced *Green Mother Earth* as a piece of recognized stature. Tr. at

16    1601:3-10; 20-24. It was published in *The Guardian* and *Complex Magazine*. Tr. at

17    1602:24-1603:1. It was featured in the documentaries *We Don't Need More Rats*

18    *Here*, *5Pointz Documentary*, *5Pointz Long Island City*, and *Don't Bomb These Walls*.

19    Tr. at 1603:2-4; 1604:15-17; 1605:14-17. It was included in *Google Arts and Culture*.

Tr. at 1603:22-23. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: It was seen by hundreds or thousands of daily visitors to 5Pointz. It was seen by millions on the passing 7 train. *Green Mother Earth* was featured multiple times in Pinterest galleries. Tr. at 1604:1-3. It was featured on a Harvard professor's blog. Tr. at 1603:12-14. The jury found it had achieved recognized stature. *See* Verdict Form at 19, DE 165.

**Steven Lew aka "Kid Lew"**

Steven Lew is well recognized graffiti artist and graphic designer. Lew Folio at 5. His work has been featured in several exhibitions, galleries, and art publications. Lew Folio at 7-19. He has a strong sales history both of his canvases and related shoe designs. Lew Folio at 20-29. His work at 5Pointz has been featured in many publications, including *Getty Images*, *Complex Magazine*, *DNAinfo*, *Artnet News*, and *Source Magazine*. Tr. at 1627:5-1629:10.

***37.   Crazy Monsters***

Category One: *Crazy Monsters* was chosen by Cohen for placement on previously untouched columns in a highly trafficked area near the original stairway collapse in mid-2013. Tr. at 1346:9-22; 1348:5-16. It was intended to be a longstanding piece. Tr. at 1349:6-10. An additional layer was added below the columns at a later date. Tr. at 1348:1-4. It was recognized by Vara as both a meritorious work of art, Tr. at 1625:1-1627:4, and a work of recognized stature, Tr. at 1627:5-1630:6. Cohen testified it was a piece of "high standing" and confirmed it "[fell] into a different category in terms of [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

Category Two: His work at 5Pointz was regularly covered by art magazines and news organizations, as described above. *Crazy Monsters* was featured in *Google Arts and Culture*. Tr. at 1627:6-8. It was featured in several travel bloggers' pieces on 5Pointz. Tr. at 1627:9-20; 1629:11-19. It was included in several online documentaries as a featured work at 5Pointz. Tr. at 1630:2-8. Snyder called the artists in this suit "top artists at the heights of their career." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: It was seen by hundreds or thousands of daily visitors to 5Pointz. Lew has over one thousand social media followers. Tr. at 1628:11-13. His series of social media posts documenting the creation of *Crazy Monsters* received over 100 likes. Lew Folio at 30-40. *Crazy Monsters* is included the photo collection of Getty Images. Tr. at 1627:24-1628:3. The jury found it had achieved recognized stature. *See* Verdict Form at 67, DE 165.

**Thomas Lucero aka "Auks One"**

Thomas Lucero is a self taught artist based in Southern California who works primarily in spiritual themes. Tr. at 729:18-24. He has had dozens of exhibitions of his art work and over a dozen press mentions. Lucero Folio at 5-6. He was commissioned by the mayor of Bakersfield to paint a mural for that city's Martin Luther King Jr. Park. Lucero Folio at 7-9.

### *38.* *Black Creature*

Category One: *Black Creature* was chosen by Cohen for placement on a highly trafficked wall at the loading dock. Tr. at 464:4-23. It was intended to be a longstanding piece. It was recognized by Vara as both a meritorious work of art, Tr. at 730:21-734:10, and a work of recognized stature, Tr. at 737:21-742:7. Cohen testified it was a piece of "high standing" and confirmed it "[fell] into a different category in terms of [his] decision as the curator" compared to other works at the site.

Tr. at 1508:8-19.

Category Two: *Black Creature* was featured on the travel blog of digital marketer Dominic Sawyer. Tr. at 739:19-740:1. Snyder called the artists in this suit "top artists at the heights of their career." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: *Black Creature* was seen by hundreds or thousands of daily visitors to 5Pointz. Lucero has over one thousand social media followers. Tr. at 741:1-8. The jury found it had achieved recognized stature. *See* Verdict Form at 35, DE 165.

**Collaborative Works**

**39. Jonathan Cohen and Maria Castillo aka "TooFly"** - ***Love Girl and Burner***[26]

Cohen's artistic credentials are listed in the decision.

Maria Castillo has been called a "graffiti legend" who has a long, illustrious career of exhibitions and murals around the world, including the tallest mural painted in the

---

[26] This piece is alternatively referred to as "*Love Warrior and Burner*" and "*Love Girl and Burner*" throughout the record. In the original decision, the Court referred to this piece as *Love Girl and Burner* based on the name in the Cohen Folio. The Court continues to use this name now but notes the discrepancy.

country of Ecuador. Castillo Folio at 4-9. She has also collaborated with many major brands, including Nike, RayBan, MOTUG X JB, and KidRobot. Castillo Folio at 16-21; Tr. at 640:14-642:22. Her works have been featured on 30 Rock, in 11 significant online videos and performances, and 35 news articles, including the *New York Times*, and seven major volumes on graffiti. Tr. at 642:18-19; 645:14-19; 648:17-19.

Category One: *Love Girl and Burner* was chosen by Cohen for placement on a longstanding wall. Tr. at 204:13-17. It was intended to be up for over a year. *Id.* It was recognized by Vara as both a meritorious work of art, Tr. at 635:8-637:19, and a work of recognized stature, Tr. at 635:3-6.

Category Two: *Love Girl and Burner* was featured in *Google Arts and Culture*. Cohen Folio at 122. It was featured in the *Vandalog* art blog. Cohen Folio at 130. Snyder called the artists in this suit "top artists at the heights of their career" and said Cohen's works at 5Pointz "reflect mastery of the form in addition to their obvious aesthetic characteristic." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: It was seen by hundreds or thousands of daily visitors to 5Pointz. Castillo has over seven thousand social media followers. Tr. at 647:3-7. *Love Girl and*

*Burner* has hundreds of likes on social media. Castillo Folio at 54-63. The jury found it had achieved recognized stature. *See* Verdict Form at 85, DE 165.

**40.    Akiko Miyakami and Jonathan Cohen - *Save 5Pointz***

Akiko Miyakami and Jonathan Cohen's credentials are listed above.

Category One: *Save 5Pointz* was chosen by Cohen for placement on a longstanding wall visible from the passing 7 train on the rooftop. Tr. at 1283:11-19. It was intended to be a long lasting wall. Tr. at 1285:7-9. It was recognized by Vara as both a meritorious work of art, Tr. at 1610:21-1611:10, and a work of recognized stature, Tr. at 1614:12-1619:11.

Category Two: Miyakami's work was described as "instantly recognizable" by Simmons. Tr. at 1615:11-12. It was featured in multiple video tributes to 5Pointz, including a video by *Future Sound TV* and a documentary by *Video Sparleck*. Tr. at 1616:15-16; 1618:6-9. It was a featured in an article by Jacqueline Hadel[27] ("Hadel"), a "renowned blogger on street art in travel culture." Tr. at 1616:8-9. Snyder called the artists in this suit "top artists at the heights of their career" and said Miyakami and Cohen's works at 5Pointz "reflect mastery of the form in addition to their obvious aesthetic characteristic." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz

---

[27] The transcript incorrectly refers to her as "Jacqueline Heigl." *See* Guerra Folio at 26 (correct spelling).

collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: It was seen by hundreds or thousands of daily visitors to 5Pointz. It was seen by millions on the 7 train. Tr. at 1283:16-19. Miyakami has thousands of social media followers. Tr. at 1617:2-7. *Save 5Pointz* has hundreds of likes on social media. Miyakami Folio at 48-49. The jury found it had achieved recognized stature. *See* Verdict Form at 91, DE 165.

**41.   Akiko Miyakami and Jonathan Cohen - *Underwater Fantasy***

Akiko Miyakami and Jonathan Cohen's credentials are listed above.

Category One: *Underwater Fantasy* was chosen by Cohen for placement on a longstanding wall with a lot of foot traffic on Crane Street, Tr. at 1278:2-12. It was intended to be a long lasting wall. Tr. at 1281:19-1282:3. It was recognized by Vara as both a meritorious work of art, Tr. at 1609:9-1610:20, and a work of recognized stature, Tr. at 1614:12-1619-11.

Category Two: Miyakami's work was described as "instantly recognizable" by Simmons. Tr. at 1615:11-12. *Underwater Fantasy* was featured in *Google Arts and Culture*. Tr. at 1615:15-16. It was featured in a Gallery Nine review of a group exhibit. Tr. at 1615:17-19. It was featured in multiple video tributes to 5Pointz, including a documentary by Alexander Henry and a video by *Future Sound TV*. Tr. at

1615:24-1616:4,12-16. It was a featured in an article by Hadel. Tr. at 1616:8-9. It was

reviewed by *Street Art in New York City*. Tr. at 1616:17-18. Snyder called the artists

in this suit "top artists at the heights of their career" and said Miyakami and Cohen's

works at 5Pointz "reflect mastery of the form in addition to their obvious aesthetic

characteristic." Tr. at 1060:8-18. It was attested to as a work of high quality by

Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz

collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo

Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: It was seen by hundreds or thousands of daily visitors to

5Pointz. Miyakami has thousands of social media followers. Tr. at 1617:2-7.

*Underwater Fantasy* has hundreds of likes on social media. Miyakami Folio at 45-47.

The jury found it had achieved recognized stature. *See* Verdict Form at 87, DE 165.

**42. Akiko Miyakami and Carlos Game - *Japanese Fantasy***

Akiko Miyakami and Carlos Game's credentials are listed above.

Category One: *Japanese Fantasy* was chosen by Cohen for placement on a

longstanding wall. Tr. 1278:2-12. It was painted in 2012 and survived until the

whitewashing. Tr. at 1290:11-15. It was recognized by Vara as both a meritorious

work of art, Tr. at 1613:23-1614:11, and a work of recognized stature, Tr. at 1614:12-

1619:11. Cohen testified it was a piece of "high standing" and confirmed it "[fell]

into a different category in terms of [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

Category Two: Miyakami's work was described as "instantly recognizable" by Simmons. Tr. at 1615:11-12. Snyder called the artists in this suit "top artists at the heights of their career" and said Miyakami and Game's works at 5Pointz "reflect mastery of the form in addition to their obvious aesthetic characteristic." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: It was seen by hundreds or thousands of daily visitors to 5Pointz. Miyakami has thousands of social media followers. Tr. at 1617:2-7. *Japanese Fantasy* has hundreds of likes on social media. Miyakami Folio at 51; Game Folio at 43.

**43. Bienbenido Guerra aka "Benny" aka "FCEE" and Carlo Nieva aka "Diego" -** ***Return of New York***

Bienbenido Guerra is an artist and art teacher. He has been commissioned to do murals by business and schools, including St. John's University. Tr. at 507:17-21; Folio at 10-14. He has been painting at 5Pointz, and its predecessor, Phun Phactory, since 1994. Guerra Folio at 5. His works have been auctioned at Guensey's Action

House. Guerra Folio at 8-9.

Carlo Nieva is a successful artist who has done murals across New York City. He has worked with many fashion brands as a graphic designer, including A-life, L'Zinger, and Bodega Skates, as well as with many New York night clubs, including Limelight, Palladium, and The Tunnel. Tr. at 381:2-9. His work has been featured in *Expresso 77 Photograph*, *DNAinfo*, and the *Hibridos Collective*. Tr. 381:13-382:23; 383:10-11; Nieva Folio at 4-18. He has created murals in collaboration with Jackson Heights Green Alliance, El Museo del Barrio, and The Renaissance Charter School. Tr. at 381:19-382:21; Nieva Folio at 6-16.

Category One: *Return of New York* is nearly three stories high and was chosen by Cohen for placement on a longstanding wall at the highly coveted loading dock. Tr. at 376:9-14; 377:17-21. It was recognized by Vara as both a meritorious work of art, Tr. at 670:15-675:4, and a work of recognized stature, Tr. at 677:6-687:10. Cohen testified it was a piece of "high standing" and confirmed it "[fell] into a different category in terms of [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

Category Two: *Return of New York* was featured by Hadel, Etsy, Red Bubble, Fine Art America, and Shutterstock. Guerra Folio at 25-34. Snyder called the artists in this suit "top artists at the heights of their career." Tr. at 1060:8-18. It was attested

to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: It was seen by hundreds or thousands of daily visitors to 5Pointz. It was seen by millions on the passing train. Both Guerra and Nieva have over one thousand social media followers. Nieva Folio at 24. *Return of New York* has more than one hundred likes on social media. Nieva Folio at 25-28; Guerra Folio at 21-22. It was featured on a third party's Flickr account. Guerra Folio at 19-20. The jury found it had achieved recognized stature. *See* Verdict Form at 97, DE 165.

44.  **William Tramontozzi aka "Jerms" and James Rocco -** *Jimi Hendrix Tribute*

James Rocco's credentials are listed above.

William Tramontozzi is an aerosol artist specializing in lettering and a DJ. He and his work has been featured in *Time Out New York*, *The Word is Bond*, and *Fresh Paint NYC*. He was featured in Elizabeth Currid's book *The Warhol Economy* as an artist who "embodies" the fusion of art and music with the modern creative economy. Tr. at 1093:6-1094:5.

Category One: *Jimi Hendrix Tribute* was chosen by Cohen for placement on a longstanding wall with significant foot traffic on Davis Street. Tr. at 956:25-957:7. It

86

was intended to be a longstanding piece. Tr. at 957:8-16. It was recognized by Vara as both a meritorious work of art, Tr. at 1090:16-1092:18, and a work of recognized stature, Tr. at 1092:19-1095:14. Cohen testified it was a piece of "high standing" and confirmed it "[fell] into a different category in terms of [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

Category Two: *Jimi Hendrix Tribute* was featured in *Google Arts and Culture.* Tramontozzi Folio at 26-27. It was featured on *Urban Media Showcase*. Tramontozzi Folio at 23; Tr. at 967:2-9. Snyder called the artists in this suit "top artists at the heights of their career." Tr. at 1060:8-18. Tramontozzi's work at 5Pointz was recognized by Austin. Tr. at 1094:8-10. *Jimi Hendrix Tribute* was featured in Hadel's blog on New York City graffiti art. Tr. at 1094:17-1095:4. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: It was seen by hundreds or thousands of daily visitors to 5Pointz. It was featured on a Japanese blog post. Tramontozzi Folio at 20-21. Rocco has over one thousand social media followers. Tr. at 1100:24-1101:6. *Jimi Hendrix Tribute* has hundreds of likes on social media, on both the artists' and third parties' accounts. Tramontozzi Folio at 22-25.The jury found it had achieved recognized

stature. *See* Verdict Form at 93, DE 165.

**45.   Jonathan Cohen, Luis Lamboy, and Thomas Lucero - *Angry Orchard***

The artists' credentials are listed above.

Category One: *Angry Orchard* was painted collaboratively in 2013 between Cohen, Lamboy, and Lucero. Tr. at 458:1-460:19; 851:6-852:25; 1431:14-1432:23. It was recognized by Vara as both a meritorious work of art, Tr. at 734:12-737:13, and a work of recognized stature, Tr. at 738:3-742:7. Cohen testified it was a piece of "high standing" and confirmed it "[fell] into a different category in terms of [his] decision as the curator" compared to other works at the site. Tr. at 1508:8-19.

Category Two: *Angry Orchard* was featured in *Google Arts and Culture.* Lucero Folio at 29-30. Snyder called the artists in this suit "top artists at the heights of their career" and said Cohen's works at 5Pointz "reflect mastery of the form in addition to their obvious aesthetic characteristic." Tr. at 1060:8-18. It was attested to as a work of high quality by Stavsky. Tr. at 1397:14-19. It was part of the "curated," Tr. at 1205:9-10, 5Pointz collection considered by Madrigale as "equal to" the Lincoln Center and the Apollo Theater in cultural significance in New York, Tr. at 1203:20-21.

Category Three: It was seen by hundreds or thousands of daily visitors to 5Pointz. The three artists have significant social media followings, as discussed above. *Angry Orchard* was recognized by the company Angry Orchard, from which

1    the artists drew inspiration. Lucero Folio at 27-28. The jury found it had achieved

2    recognized stature. *See* Verdict Form at 99, DE 165.

3